UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| OVIEDO MEDICAL CENTER, LLC | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 6:19-cv-01711-WWB-EJK |
| ADVENTIST HEALTH SYSTEM/SUNBELT, | ) |
| INC. d/b/a ADVENTHEALTH OVIEDO ER | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |

## **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116 of the Lanham Act, Plaintiff, Oviedo Medical Center, LLC ("Plaintiff"), by counsel, respectfully requests that the Court enter a preliminary injunction preventing Defendant, Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth Oviedo ER ("Defendant"), from further use of the term and phrase "Oviedo ER" in any fashion in connection with its soon-to-be opened emergency care facility.

## **INTRODUCTION**

This is an action for infringement of Plaintiff's trademark, unfair competition, and cybersquatting. Since 2013, Plaintiff has operated an emergency care facility providing related health care services using the trade name and service mark OVIEDO ER. Plaintiff was the first of its kind in its trade area and, over the years, has developed a strong reputation and goodwill in and to its OVIEDO ER mark, resulting in that mark serving to distinguish Plaintiff from others in the market.

Defendant has recently entered the same market, scheduled to open October 6, 2019, constructing a competing emergency care facility within one mile of Plaintiff's facility and, incredibly, promoting that facility under the "Oviedo ER" name and mark. Defendant's use of "Oviedo ER" infringes Plaintiff's senior trademark rights and otherwise constitutes unfair competition because such use is likely to cause confusion among the relevant consuming public between the competing facilities. As a result of this confusion, Defendant is directly trading on the goodwill Plaintiff has established in its OVIEDO ER mark and is causing irreparable harm to Plaintiff.

The time for injunctive relief is now. To preserve the *status quo*, Defendant should be enjoined from proceeding with the full-scale operation of a competing emergency care facility using the exact same name as Plaintiff in the same market. Otherwise, consumers and, more importantly, health and emergency services providers, will be highly confused as to the source of the services offered under identical names in the same trade area. As such, a preliminary injunction should be issued, prior to the October 6, 2019 opening date, until a trial on the merits can be held.

## RELEVANT FACTUAL BACKGROUND

### Plaintiff and its OVIEDO ER Mark

Plaintiff, either on its own or via a predecessor entity, has been providing emergency room services, including pediatric emergency care, diagnostic imaging, and cardiac life support, under the trade name/service mark OVIEDO ER since it opened the first free-standing emergency care facility in Oviedo, Florida in 2013. *See* Complaint for Injunctive Relief [D.E. 1] ("Complaint"), ¶¶ 11-13. Even prior to the opening of the OVIEDO ER facility, Plaintiff,

2

via its predecessor, engaged in promotion and branding of the OVIEDO ER name and mark. These efforts included registration of the domain www.oviedoer.com in November 2012 and operation of the www.oviedoer.com website.  *Id*., ¶¶ 14-15.  *See also* Exhibits 1 and 2 to the Complaint.    These efforts also included the registration of the Fictitious Name of "OVIEDO ER" with the State of Florida Division of Corporations as early as September 19, 2013 by Plaintiff's predecessor.  *See* Complaint, ¶¶ 16-17.  *See also* Exhibit 3 to the Complaint.

The OVIEDO ER name and mark has become synonymous with Plaintiff and is well-known in the Plaintiff's trade area.  *See* Complaint, ¶ 17.  When Plaintiff acquired the OVIEDO ER branded facility in 2017, it acquired the rights in the OVIEDO ER trade name and service mark from its predecessor.  *Id.,* ¶ 18.  Plaintiff prominently uses its OVIEDO ER mark in its facility signage and in other promotional materials and has done so since the opening of the facility in 2013. *Id.,* ¶ 19.  *See also* Exhibit 4 to the Complaint.   Since the opening of Plaintiff's Oviedo ER, consumers and the media have recognized the name "OVIEDO ER" and the OVIEDO ER mark as signifying the Plaintiff and its emergency care facility.   *See* Complaint, ¶¶ 20-22.  *See also* Exhibits 5 and 6 to the Complaint.

Because of its commitment to bring a full-service hospital to the Oviedo community, Plaintiff subsequently began working towards opening a full service hospital contiguous to the existing emergency care facility which would continue to incorporate the OVIEDO ER mark. *See* Complaint, ¶ 23.   Indeed, Plaintiff's efforts eventually led to the opening of the Oviedo Medical Center in January, 2017, which is a full service hospital where the majority of the patients treated originate from the OVIEDO ER branded facility.  *Id.,* ¶ 24.  Moreover, after Oviedo Medical Center opened, Plaintiff continued using the service mark OVIEDO ER and

the community continues to identify the facility by that name.  *Id.*, ¶ 25.  *See also* Exhibit 5 to the Complaint.

Since the OVIEDO ER branded facility was opened in 2013, Plaintiff (and its predecessor) has received significant media publicity which has helped to further establish the public's connection between the OVIEDO ER mark and name and Plaintiff.  *See* Complaint, ¶ 27.  *See also* Exhibit 8 to the Complaint.   Since it opened in 2013, Plaintiff has spent in excess of $1.3 million dollars in advertising and promotional costs related to the promotion of the OVIEDO ER branded facility.  *See* Complaint, ¶¶ 28-34.  *See also* Exhibits 9, 10 and 11 to the Complaint.   As a result of Plaintiff's continuous and substantially exclusive use of the OVIEDO ER mark over the past five (5) plus years, and significant press and advertising of the OVIEDO ER mark, the OVIEDO ER mark is well-known to the public in Plaintiff's trade area as signifying the facility owned by Plaintiff as well as the services provided by Plaintiff at that facility.   *See* Complaint, ¶ 35.  *See also* Exhibit 5 to the Complaint.

Consumers have come to understand that the name OVIEDO ER identifies Plaintiff and the emergency care facility operated by Plaintiff and further serves to distinguish Plaintiff between its competitors in the market.    *See* Complaint, ¶¶ 35-37.   The OVIEDO ER mark has thereby acquired substantial goodwill and value to Plaintiff.  *See id.,* ¶ 36.   Because of its substantially exclusive and continuous use of the OVIEDO ER mark in commerce for over five years, and Plaintiff's extensive use and promotion of the OVIEDO ER mark resulting in the direct association of the mark with Plaintiff as the source of its services, the OVIEDO ER mark has acquired distinctiveness under §2(f) of the Lanham Act, 15 U.S.C. §1052(f).    *See id.,* ¶ 38.

**Defendant and its Infringing Use of the OVIEDO ER Mark**

Upon information and belief, Defendant is a faith-based health care system sponsored by Seventh-day Adventist Church, headquartered in Altamonte Springs, Florida and operates facilities within nine states in the United States, including throughout Florida. *See id.,* ¶ 39. Defendant has 45 hospital campuses, more than 8200 licensed beds in nine states, and serves more than five million patients annually. *Id.,* ¶ 40. In the fall of 2018, Defendant sent out invitations announcing the groundbreaking of a new planned facility [eret 1, 2018 under the name "FLORIDA HOSPITAL OVIEDO ER." *Id.,* ¶ 43. *See also* Exhibit 13 to the Complaint. On or about November 1, 2018, the announced groundbreaking took place on property located only about a mile from Plaintiff's OVIEDO ER branded facility, also on Red Bug Lake Road. *See* Complaint, ¶ 44. Defendant's proposed OVIEDO ER facility was and continues to be a freestanding emergency care facility that would operate in direct competition to Plaintiff in the exact same trade area and market and, in fact, on the very same street. *Id.,* ¶ 45.

On November 5, 2018, the media had reported the groundbreaking and reference was made to Defendant's facility as a new OVIEDO ER and even referenced Plaintiff's OVIEDO ER branded facility in the same article. *Id.,* ¶ 46. *See also* Exhibit 14 to the Complaint. Further, since it announced the potential opening of its OVIEDO ER facility, Defendant has continually referred to its facility as OVIEDO ER in marketing and promotional material. *Id.,* ¶¶ 47-50. *See also* Exhibits 15-17 to the Complaint. Defendant's prominent use of the term OVIEDO ER further heightens the likelihood that consumers will be confused and/or believe that the two "Oviedo ER's" are affiliated or somehow related – even if Defendant were to use the term "Adventhealth" preceding the exact OVIEDO ER mark. *See* Complaint, ¶ 50. If

Defendant is permitted to use the exact term OVIEDO ER in its name and in the marketing for its competing healthcare facility, there will be significant consumer confusion as to the source or affiliation of the parties' respective services.  *Id.,* ¶ 51.

**Plaintiff Notifies Defendant of its Infringing Activity**

After learning of Defendant's actions and greatly concerned about the possibility of confusion, on November 16, 2018, Plaintiff informed Defendant by counsel through a letter that Plaintiff had been using the OVIEDO ER name and mark to brand its freestanding emergency care facility since 2013, and Defendant's use of the term OVIEDO ER in any context would cause "significant confusion."  *Id.,* ¶¶ 52-54.  *See also* Exhibit 19 to the Complaint.   Since Defendant had no permission from Plaintiff to use the term OVIEDO ER, or anything confusingly similar, Plaintiff demanded that Defendant cease and desist from any further use of the term and suggested the parties work together to resolve the matter in a constructive, amicable manner.  *Id.,* ¶ 55.  *See also* Exhibit 19 to the Complaint.

On December 6, 2018, counsel for Defendant responded and represented that Defendant would rebrand to the name "ADVENTHEALTH OVIEDO ER" when referencing its emergency room facility.  *See* Complaint, ¶ 56.  *See also* Exhibit 20 to the Complaint.   On January 2, 2019, counsel for Plaintiff replied and stated that Plaintiff has been "the only entity using OVIEDO ER as a trade name and service mark in the vicinity at issue since 2013" and is the only party to establish secondary meaning pursuant to Section 2(f) of the Trademark Act. *See* Complaint, ¶ 57.  *See also* Exhibit 21 to the Complaint.  Plaintiff's counsel further articulated Plaintiff's objection to Defendant's use of the rebranded name "ADVENTHEALTH OVIEDO ER" or any other name that wholly incorporates the exact

"OVIEDO ER" mark and name in any fashion.  *Id.*  Having received no response, Plaintiff's

sent a follow up letter on April 17, 2019, reiterating its objection to Defendant's planned use

of the name "ADVENTHEALTH OVIEDO ER", which has been ignored by Defendant.  *See*

Complaint, ¶ 58.  *See also* Exhibit 22 to Complaint.

**Defendant's Continued Defiance of Plaintiff's Trademark Rights**

        In further violation of Plaintiff's rights, on or about May 30, 2019, and after receiving

repeated notice of Plaintiff's objections, Defendant erected a billboard on the property of its

future free-standing emergency room.  *See* Complaint, ¶ 59.  *See also* Exhibit 23 to Complaint.

On June 13, 2019, the Orlando Business Journal published an article about Defendant's new

facility that featured a picture of Plaintiff's OVIEDO ER branded facility – perpetuating

confusion between the two companies.  *See* Complaint, ¶ 61.  *See also* Exhibit 24 to Complaint.

Even more concerning, and as disclosed in Plaintiff's cease and desist communications,

emergency services, such as EMTs and fire departments, could be confused as to which

OVIEDO ER they are supposed to take patients to – which could prejudice patient care because

of the possibility of delayed treatment from the diversion of care.   *See* Complaint, ¶ 62.  In

addition, despite knowing of Plaintiff's claimed rights to the OVIEDO ER mark and name, on

or about June 24, 2019, Defendant registered the domain name <workatoviedoer.com> through

GoDaddy.com, and is using that domain to redirect consumers to the AdventHealth website

promoting its "Oviedo ER."  *Id.*, ¶ 63.  *See also* Exhibits 25 and 26 to the Complaint.  Based

on the foregoing, and as set forth below, Defendant's use of Plaintiff's OVIEDO ER name and

mark is likely to cause confusion as to the source of the goods and services associated with the

mark, and/or is likely to suggest sponsorship of the services and/or affiliation between Plaintiff and Defendant.   *See* Complaint, ¶ 64.   *See also* Exhibit 5 to the Complaint.

## ARGUMENT

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. *See* Fed. R. Civ. P. 65(a).   To obtain a preliminary injunction in the Eleventh Circuit, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citations omitted). Consideration of these factors "requir[es] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000).   The purpose of a preliminary injunction is to preserve the *status quo* and protect the rights of the movant pending a merits hearing.   *Granny Goose Foods., lnc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 439 (1974).   A preliminary injunction operates to prevent a defendant from continuing to "free ride" on a plaintiff's efforts to promote its brand and establish goodwill.   *Kreation Juicery, Inc. v. Shekarchi*, 2014 WL 7564679 at *12 (C.D. Cal., Sept. 17, 2014).   That is exactly what is happening in this case.

As discussed in detail below, each of the four prongs for the issuance of a preliminary injunction weighs heavily in favor of Plaintiff in this case and a preliminary injunction should

be entered so that the *status quo* may be maintained and irreparable harm to the Plaintiff and the public avoided.

## I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff seeks preliminary injunctive relief on its claims for (1) trademark infringement and unfair competition under §43(a) of the Lanham Act, 15 U.S.C. §1125(a); (2) common law trademark infringement and unfair competition under Florida law; and (3) violation of the Florida Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq.* – all based on Plaintiff's ownership of its OVIEDO ER mark and Defendant's use of the exact term, or any mark which includes or incorporates, the phrase OVIEDO ER for competing services in the same geographic market.  As will be discussed in detail in this section, Plaintiff is likely to succeed on these claims and a preliminary injunction should be granted.

Section 43(a) of the Lanham Act makes it unlawful for any person "who, on or in connection with any goods or services ... uses in commerce any word, ... false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125(a).  Section 43(a) forbids unfair trade practices involving infringement of trademarks, service marks, or trade dress, even in the absence of federal trademark registration. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

To prevail on a claim for trademark infringement (false designation of origin) and unfair competition under Section 43(a) of the Lanham Act, under corresponding state and common

law, and under the FDUTPA[1], Plaintiff must prove that (1) it is the owner of prior trademark rights to the OVIEDO ER mark; and (2) there is a likelihood of confusion between Plaintiff and Defendant based on Defendant's use of the term OVIEDO ER.  *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *see also Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001); and *Davidoff & Cie, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1300-01 (11th Cir. 2001) (holding that "[i]n order to succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendant used the mark in commerce without its consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake").  As with trademark infringement claims, the determining factor for § 43(a) and related state law claims is "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *See Edge Sys.*, 186 F. Supp. 3d at 1348 (citing *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044 at *5 (S.D. Fla. Apr. 23, 2014)).

As will be discussed below, Plaintiff owns valid and protectable trademark rights to its OVIEDO ER mark – which was used by Plaintiff years before Defendant ever began marketing

---

[1]The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition "are the same as those for federal claims of trademark infringement and unfair competition." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1359 (S.D. Fla. 2016), aff'd, 708 F. App'x 998 (Fed. Cir. 2017). *See also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) (stating that "[c]ourts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition"); *Investacorp, Inc., v Aarabian Investment Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (holding that the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim); and *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F. 3d 1338 (11th Cir. 2012) (applying same standard to FDUTPA claims).  Similarly, under Florida common law, trademark infringement can serve as the foundation for an unfair competition claim.  *Tobinick v. Novella*, 142 F. Supp. 3d 1275, 1282–83 (S.D. Fla. Oct. 2, 2015).

competing services using the term OVIEDO ER.   Further, there is a high likelihood of consumer confusion based on the Defendant's use of the term OVIEDO ER.

### A.   Plaintiff Owns Rights to the OVIEDO ER Mark

In order to succeed on the merits, Plaintiff must first establish that it owns protected trademark interests to the OVIEDO ER mark.  *See Am. Tele. and Comm. Corp. v. Am. Comm. and Tele., Inc.*, 810 F.2d 1546, 1550 (11th Cir. 1987).  Actual substantive rights to a trademark arise based on its use in commerce and its distinctiveness.  *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522 (11th Cir. 1991). "Use in commerce" means "the bona fide use of a mark in the ordinary course of trade."  With respect to services, a mark is deemed used in commerce when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce."  *See* 15 U.S.C. § 1127.

Further, trademark protection "is only available to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). While some marks are inherently distinctive; others acquire distinctiveness (or "secondary meaning") by becoming associated in the minds of the public with the products or services offered by the proprietor of the mark.  *Two Pesos*, 505 U.S. at 768–69.  A plaintiff can make a *prima facie* showing of "secondary meaning" by showing that it has had substantially exclusive and continuous use of the mark for five years. *See* 15 U.S.C. § 1052(f); and *Welding*, 509 F.3d at 1358.

Otherwise, whether a name has attained secondary meaning depends on the length and nature of the name's use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business,

and the degree of actual recognition by the public that the name designates the proprietor's product or service. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Finally, a party's intentional copying of a mark is highly indicative that the mark has acquired secondary meaning. *See Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983) (explaining that although "proof of intentional copying," while not alone sufficient, "is probative evidence on the secondary meaning issue").

As an initial matter, there is no issue as to priority here in that Plaintiff has used the OVIEDO ER mark in advertising and promotions in connection with its healthcare, medical, and emergency medical related services since it opened its emergency care facility in November, 2013. *See* Complaint, ¶¶ 27-34.[2] Since the OVIEDO ER facility opened in November 2013, the OVIEDO ER mark has been prominently displayed by Plaintiff on the outside of the facility and in advertising and marketing for the facility. *Id.*, ¶ 19. *See also* Exhibit 4 to the Complaint. On the other hand, Defendant only started using OVIEDO ER in the fall of 2018, when it announced to the public that it would be groundbreaking on its OVIEDO ER only a mile from Plaintiff's facility.[3] *See e.g., Edge Sys.*, 186 F. Supp. 3d at 1345 (no issue as to priority where plaintiff continuously operated under the trade name for 14 years prior to defendant's entry into the market using a similar name).

As to distinctiveness or secondary meaning, Plaintiff has had substantially exclusive and continuous use of the OVIEDO ER mark since 2013 – which represents over five (5) years

---

[2] Similarly, there is no issue as to whether Plaintiff has used the OVIEDO ER mark in commerce since Plaintiff's services are rendered in commerce which is lawfully regulated by Congress. *See* Compl., ¶ 17.

[3] *See* Complaint, ¶¶ 43-44. *See also* Exhibit 13 to Complaint.

of continuous use.  *See* Complaint, ¶ 17.  As a result, Plaintiff is entitled to the presumption that its OVIEDO ER mark has acquired distinctiveness.  *See* 15 U.S.C. §1052(f) (stating that proof of "substantially exclusive and continuous use" of a designation as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made may establish prima facie evidence that the mark has acquired distinctiveness as used with the applicant's goods or services in commerce).

In addition, even though Plaintiff has achieved acquired distinctiveness in its OVIEDO ER mark based on its over five (5) years of continuous and substantially exclusive use, further evidence suggests that the public has come to associate the OVIEDO ER mark and name with Plaintiff.  Plaintiff has spent in excess of $1.3 million in advertising and promotional costs related to the promotion of the OVIEDO ER branded facility since it opened in 2013.  *See* Complaint, ¶ 28.  In that time, Plaintiff has served over 135,000 patients and the facility has created hundreds of jobs for the community.  *Id.*, ¶ 26.  There has been significant media coverage over the years since Plaintiff opened that has recognized the OVIEDO ER mark and the connection between that mark and Plaintiff.  *Id.*, ¶ 27.  *See also* Exhibit 8 to Complaint. Finally, it can be inferred that Defendant intentionally sought to trade off the goodwill associated with the OVIEDO ER mark and Plaintiff since it chose to adopt an identical mark and even refused to change its name when the infringement was brought to its attention.  Not only that, Defendant has escalated its use of the term OVIEDO ER, including increased online activity, even after receiving cease and desist correspondence from Plaintiff.  *See* Complaint, ¶¶ 62-63.

As such, because Plaintiff has established use of its OVIEDO ER mark in commerce, and within the State of Florida, and such continuous and exclusive use of that mark for over five (5) years, Plaintiff has demonstrated that it is likely to succeed on its claim of ownership to valid trademark rights in and to the OVIEDO ER mark.  Therefore, Plaintiff has satisfied the first requirement for an infringement claim.

**B.      Defendant's Use of OVIEDO ER is Likely to Cause Confusion**

The "*sine qua non*" of trademark infringement is "likelihood of confusion" on the part of the relevant consuming public as to the source of the goods or services at issue.  *Fila U.S.A., Inc. v. Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995).  Indeed, the cornerstone of a likelihood of confusion analysis is based on whether the ordinary, prudent consumer in the marketplace would likely be confused. 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4th Ed., § 23.63.  Notably, in assessing the likelihood of confusion, the inquiry is not limited to whether one product or service would be mistaken for the other but includes any false or misleading suggestion of <u>any affiliation or relationship amongst companies</u> or their products or services.  *See* 15 U.S.C. § 1125(a) (emphasis added) (rendering actionable any usage of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person").

The Eleventh Circuit generally uses a seven-factor test in determining whether there is a likelihood of confusion.  These factors, as set forth in the *Frehling* case, include: (1) the type or strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity

of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) any evidence of actual confusion. *Frehling*, 192 F.3d at 1335. These factors are weighed and analyzed in light of the totality of the circumstances. *Id*. The plaintiff need not prevail on all seven factors in order to establish a claim for infringement. *Id*. at 1340. The relevant importance of each factor is determined on a case-by-case basis. *Edge Sys.*, 186 F. Supp. 3d at 1348–49. *See also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) (recognizing that application of the multi-factor test "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance'").

While courts in the Eleventh Circuit look to all of the factors, there is recognition that the likelihood of confusion is greatest "when the infringer uses the exact trademark as the plaintiff." *Opticians Ass'n. of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3rd Cir. 1990). In such cases, the "likelihood of confusion is inevitable." *Id*. In fact, a leading treatise on trademark law notes that cases where a defendant uses an identical mark are "open and shut" and do not involve protracted litigation to determine liability for trademark infringement." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:3 (1996). This is especially true where the same mark is being used in connection with identical or competing services. Here, as set forth below, Defendant is using the exact term OVIEDO ER in connection with competing services. As a result, this is an "open and shut" case of likelihood of confusion. Nonetheless, an analysis of all of the factors shows that there is a strong likelihood of confusion.

### 1. The Marks are Identical

In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337.  As stated above, a likelihood of confusion is even greater when an infringer uses the exact trademark.  *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, 2012 WL 2873733 at ** 8-11 (S.D. Fla. 2012).  Courts "look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."  *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir. 1982).  Here, the parties are both using the identical term OVIEDO ER. This factor weighs heavily in favor of a finding of likelihood of confusion.

### 2. The Services are Identical

The likelihood that two marks will be confused is greater when the marks are used on the same or similar products. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985).  Here, the services performed and/or to be performed by the parties are identical in that both parties provide competing emergency care facilities which include competing healthcare, medical, and emergency medical related services. They are both operating these competing emergency care facilities within a mile of each other.  This factor also weighs heavily in favor of Plaintiff.

### 3.  Sales Methods Are Similar

If products are sold through the same trade channels, to the same customers, there is a greater chance there will be a likelihood of confusion between the marks.  *See Frehling*, 192

F.2d at 1339. "This factor takes into consideration where, how, and to whom the parties' products are sold." *Id*.  *See also Ambn't, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir. 1986) (finding that the "[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers").

Here, the parties are offering their competing services to the exact same customer base in the exact same geographic market.  This factor also weighs heavily in favor of a finding of likelihood of confusion.

### 4. There is Similar Advertising

If two parties are employing similar marketing strategies for their respective products, there is a greater probability of confusion.  *See Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).  In this case, the complete record of the parties' advertising has not yet been established.  However, Plaintiff, *inter alia*, advertises using its OVIEDO ER mark online, through signage, and in print advertisements.  *See* Complaint, ¶¶ 19-20; 29-34.  In fact, even after receiving repeated notices of Plaintiff's concerns, Defendant registered the domain for www.workatoviedoer.com, which automatically redirects to the landing page for Defendant's OVIEDO ER facility.  *See id.,* ¶ 63.  *See also* Exhibits 25 and 26 to Complaint.   In fact, Defendant's proposed facility is scheduled to open October 6, 2019.  *Id.,* ¶ 63.  Thus, since the parties engage in similar advertising this factor also supports a finding of likelihood of confusion.

### 5. The Mark is Strong

To determine the strength of a mark, the Eleventh Circuit considers the length and manner of its use, whether it has reached incontestable status, the type of mark and the degree

to which third parties make use of the mark. *Frehling*, 192 F.3d at 1335-36. Where a mark has been used for a long period of time and public recognition of the mark then the mark is consider strong. *See e.g., Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir.) (holding that extensive advertising, length of time in business and public recognition increase the strength of a mark). Finally, the lack of third party use of similar marks illustrates the strength of the mark for purposes of the likelihood of confusion analysis.

The OVIEDO ER mark has been used by Plaintiff since November, 2013 – over five (5) years. That use has been exclusive in that until Defendant, no other facility in the area has used the term "Oviedo ER" in connection with the promotion of their facility or as the name of the facility. The media has also referred to the OVIEDO ER mark as signifying the source of Plaintiff's services. *See* Complaint, ¶¶ 20-22. Plaintiff has spent over $1.3 million in advertising costs to promote the OVIEDO ER branded facility since it opened in 2013 and has served over 135,000 patients in that time. *Id.*, ¶ 28. All of this leads to the conclusion that the OVIEDO mark is strong and, as such, this factor weighs in favor of Plaintiff.

### 6. Defendant's Intent

The intent factor generally focuses on whether the allegedly infringing party adopted its mark with the intent to derive an unearned benefit from the senior party's efforts. *See Frehling*, 192 F.2d at 1340. This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Id*. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit*, 38 F.3d 1179 (11th Cir. 1994). Intent to benefit from the plaintiff's mark can be present without direct evidence so long as it may be found that a jury might have inferred that a

defendant purposely chose a mark which was very similar to the trademark owners. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983).

Defendant could have chosen a number of alternative names when it decided to name its facility but it instead chose to use the exact same name as the Plaintiff. And then, when it represented that it would "rebrand", the proposed rebranded name, "AdventHealth Oviedo ER" Defendant still wholly incorporated the entirety of Plaintiff's OVIEDO ER mark. Plaintiff even proposed that Defendant use alternative names such as "AdventHealth ER at Winter Park ….", "AdventHealth ER in Oviedo", or simply "AdventHealth ER." *See* Complaint, ¶ 56. *See also* Exhibit 21 to the Complaint. However, Defendant refused to use one of these alternative names and/or otherwise comply with Plaintiff's requests. *Id*. In fact, at the time of the filing of this Action, Defendant's website prominently refers to its new facility as "Oviedo ER." *See e.g.,* Complaint, ¶¶ 59-60; 63. Further, Defendant is currently recruiting employees for its facility which it refers to as "Oviedo ER." *Id*. Moreover, Defendant is referencing its new facility in the community as "Oviedo ER." *Id*. Even worse, Defendant not only continued to use the exact term OVIEDO ER after receiving complaints from Plaintiff, but also increased that use, for instance, by registering and using the domain www.workatoviedoer.com. *Id.* Accordingly, it can be inferred that Defendant has chosen to use and has continued to use the exact term OVIEDO ER solely to capitalize off the goodwill Plaintiff has established in and to its OVIEDO ER mark. This factor also shows a likelihood of confusion.

### 7. Actual Confusion Seems to be Occurring

Evidence of actual confusion is not necessary to support a finding of a likelihood of confusion. *See Remy Martin*, 756 F.2d at 1539. And, in this case, the issue of actual confusion

at this point may be premature since Defendant has yet to open its facility. However, Plaintiff is concerned that Defendant's pre-opening marketing and publicity is already resulting in some actual confusion within the media. Specifically, on June 13, 2019, the *Orlando Business Journal* published an article referencing Defendant's entry into the market in which the lead photo identified Plaintiff's facility, clearly featuring the OVIEDO ER name and mark. *See* Complaint, ¶ 61. *See also* Exhibit 24 to the Complaint. The media's use of Plaintiff's OVIEDO ER facility to publicize Defendant's "Oviedo ER" facility heightens the likelihood that consumers will be confused when the confusion is perpetuated through the media. This factor further compels a finding of likelihood of confusion.

Given the fact that the marks at issue here are (1) identical; (2) being used in connection with identical, competing services; (3) marketed to the exact same consumers in the same trade area; and (4) marketed and used in advertising in a similar fashion, coupled with the inferred intent of Defendant to copy Plaintiff's well-known mark, plus the fact that there has already been some actual confusion in the media, their likelihood of confusion is inevitable based on Defendant's use of the OVIEDO ER mark and/or the exact term, or any mark which includes or incorporates the phrase "Oviedo ER".

## II. PLAINTIFF WILL BE IRREPRABLY HARMED IF DEFENDANT'S INFRINGING ACTIVITY IS ALLOWED TO CONTINUE

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Mycoskie, LLC*

*v. 2018prettycat*, 2019 WL 1921998 at *4 (S.D. Fla. Apr. 30, 2019).  Because of the inherent difficulty of valuing the damage to such intangibles as the goodwill or business reputation, courts routinely grant injunctions in trademark actions.  *See McDonald's Corp.*, 147 F.3d at 1310 (holding "trademark actions 'are common venues for the issuance of preliminary injunctions'").  Preliminary injunctions are common in trademark actions because legal remedies are ordinarily inadequate for consumer confusion and reputational damage.  *Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, 2019 WL 1552868 at *3 (M.D. Fla. Apr. 10, 2019) (recognizing irreparable harm where there is a strong showing of likelihood of confusion).

For years, the Eleventh Circuit (along with many other circuits) held that courts should "extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *See Uber Promotions, Inc. v. Uber Techs., Inc.,* 162 F. Supp. 3d 1253, 1261 (N.D. Fla. 2016) (citing *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008).   The appropriateness of this presumption has been called into doubt, however, after the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).   *See Uber*, 162 F. Supp. 3d at 1261. Nonetheless, the Eleventh Circuit has provided recent guidance and given courts under its charge leeway to effectively presume irreparable harm based on the facts and circumstances of the particular case and after consideration of the equities involved.  *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016) (holding a presumption of irreparable injury may still be "an appropriate exercise of [the district court's] discretion in light of the

historical traditions" where "the particular circumstances of the instant case bear substantial parallels to previous cases" in which irreparable harm has been found).

Further, a trademark owner's loss of reputation or goodwill can constitute irreparable injury. *See e.g., Nike, Inc. v. Lydner*, 2008 WL 4426633 at *6 (M.D. Fla. Sept. 25, 2008) (defendants defaulted and court granted preliminary injunction where facts established that plaintiff "developed goodwill among the consuming public which would be undermined if Defendants are not prohibited from selling merchandise bearing [the plaintiff]'s mark, thereby creating a likelihood that the public would be confused"). As such, in infringement cases, it is "generally recognized" that there is no adequate remedy at law and that infringement by its very nature causes irreparable harm. *Tally-Ho, Inc. v. Coast Community. College District*, 889 F.2d 1018, 1029 (11th Cir. 1989).

Here, Plaintiff has presented evidence of irreparable harm. As set forth above, there is a strong likelihood of confusion in this case since Defendant is using the Plaintiff's mark in its entirety and using it in connection with directly competing services in the same geographic market. Not only that, all of the confusion factors weigh in favor of a likelihood of confusion finding. In addition, allowing the Defendant to operate a competing emergency room facility under the exact same name as Plaintiff (or any mark which includes or incorporates Plaintiff's name) will undoubtedly result in the loss of control over Plaintiff's reputation and goodwill. Plaintiff cannot control the quality of services provided by Defendant and those services would appear to be provided by Plaintiff if Defendant were permitted to use the exact same name or any mark which includes or incorporates Plaintiff's name. This type of loss cannot possibly be remedied or quantified through monetary damages. *See King Ranch, Inc. v. King Ranch*

*Contractors, LLC*, 2013 WL 2371245 at ** 12-13 (M.D. Fla. May 30, 2013) (finding a likelihood of irreparable harm based on damage to the plaintiff's reputation and goodwill if Defendant continued to use plaintiff's valuable mark).

Accordingly, the record contains ample evidence to support a finding that Plaintiff is likely to suffer irreparable harm if a preliminary injunction is not granted.

## III.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR

The third factor courts must consider when granting injunctive relief is whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party. *See Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011). Issuing a preliminary injunction against a trademark infringer would result in no legitimate harm since "the preliminary injunction would only prevent them from using marks which they are not entitled to use." *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988). In this case, the balance of hardships weighs heavily in Plaintiff's favor. "Any hardship caused by the preliminary injunction may justly fall on the parties which consciously decided to dress their goods for the market in a manner 'so near to [a] successful rival that the public may fail to distinguish between them.'" *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1431-32 (D. Minn. 1989). Plaintiff is also harmed by having to pursue this action. *See Tracfone,* 102 F. Supp. 3d at 1333.

At most, Defendant's harm (if any) from the issuance of a preliminary injunction would be the loss of its ability to continue to perpetrate an irreparable harm on Plaintiff's goodwill and reputation. "Indeed, issuance of a preliminary injunction will merely enjoin Defendants from conducting a business which is already prohibited by federal law." *TracFone Wireless,*

*Inc. v. Washington*, 978 F. Supp.2d 1225, 1234 (M.D. Fla. 2013).  Issuance of a preliminary injunction here would not prevent Defendant from operating its business.  The injunction would simply force Defendant to use a non-infringing name and otherwise change its name to one of the many non-confusing names available to it.  Accordingly, the balance of equities tips in favor of Plaintiff.

## IV.   THE PUBLIC INTEREST WILL BE ADVANCED BY A PRELIMINARY INJUNCTION PREVENTING CONFUSION

The Eleventh Circuit has recognized that "the public interest in preventing confusion around the marketplace is *paramount* to any inequity caused the [defendant]." *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (emphasis added). Indeed, one of the primary purposes of the Lanham Act is to protect the purchasing public from being misled or confused as to the source or origin of goods or services. *Davidoff*, 263 F.3d at 1301 (finding that "[c]onsumers who purchase a particular product expect to receive the same special characteristics every time…. The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled"). *See also Teledyne*, 433 F. Supp. at 740 (holding that "[c]ustomer confusion is by its very nature against the public interest").  The public interest favors issuance of a preliminary injunction in order to protect the public from being defrauded by the reproduction of goods under identical and infringing designations.  *See St-Honore v. 2014Meimei*, 2016 WL 4801379 at *4 (S.D. Fla. 2016); *Telestrata, LLC v. NetTALK.com, Inc.*, 126 F.Supp.3d 1344, 1356 (S.D. Fla., 2015).

The public interest compels entry of a preliminary injunction in this case because the public has a great interest in not being confused when there are emergency medical occurrences

and emergency care services at stake.  Where public safety is at issue, the public interest is to

protect the public.  *See e.g., Martinez v. Sch. Bd. of Hillsborough Cty., Fla.,* 675 F. Supp. 1574,

1582 (M.D. Fla. 1987)(stating that *"[w]here, as here, there is any question as to whether the*

*public safety and welfare is threatened, the Court must rule on the side of that public interest*")

(emphasis in original).  Allowing there to be two emergency room facilities to coexist under

the exact same name OVIEDO ER (or any mark which includes or incorporates the name

OVIEDO ER) could lead to hazardous unintended consequences.  The public interest would

be served by prohibiting Defendant from using the OVIEDO ER mark given that Defendant is

not affiliated with, or endorsed by, Plaintiff and to prevent the significant confusion that would

surely occur from two emergency hospitals being located within a mile of each other using the

same name.  A preliminary injunction, if issued, would heavily protect the public interests in

this case.

## V.     AN INJUNCTION BOND SHOULD BE WAIVED, OR SET AT A NOMINAL AMOUNT

Rule 65(c) provides "[n]o . . . preliminary injunction shall issue except upon the giving

of security by the applicant, in such sum as the court deems proper, for the payment of such

costs and damages as may be incurred or suffered by any party who is found to have been

wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although the language of Rule 65(c)

appears to be mandatory, over the past twenty years, federal courts have come to recognize

that the district court possesses discretion over whether to require the posting of security."

*Popular Bank v. Banco Popular*, 180 F.R.D. 461, 463 (S.D. Fla. 1998).  "Whether or not to

require a bond in any particular case -- and the amount of any such bond demanded -- is within

the discretion of the trial judge." *University Books & Videos, Inc. v. Metropolitan Dade*

*County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999).  In other words, the requirement that the moving party post a security bond may be waived by the Court.  *BMW of North America, Inc. v. Au-Tomotive Gold, Inc.*, 1996 WL 1609124 at * 9 (M.D. Fla. 1996); *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707 (M.D. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991).  This case involves blatant infringement of a distinctive mark.  AdventHealth has no legitimate claim to the mark and has been put on notice through numerous letters yet continues to blatantly infringe.  Accordingly, this Court should waive the bond requirement.

## CONCLUSION

For the reasons discussed herein, Plaintiff is likely to succeed on its related claims for trademark infringement against Defendant based on Defendant's use of the OVIEDO ER mark, and will undoubtedly suffer irreparable harm if Defendant is allowed to continue using the OVIEDO ER mark.  Further, the public interest would be served by preventing confusion, and a balance of hardships weigh in favor of the issuance of an injunction.  As a result, a preliminary injunction should be issued preventing Defendant from continuing to use the OVIEDO ER mark until a trial on the merits can be completed.

Dated: September 3rd, 2019

Respectfully submitted,

*/s/ Martin B. Goldberg*

Martin B. Goldberg
Emily L. Pincow
LASH & GOLDBERG, LLP
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL  33131-2158
Phone: (305) 347-4040
Fax: (305) 347-4050
mgoldberg@lashgoldberg.com
epincow@lashgoldberg.com

and

Dennis D. Murrell*
Elisabeth S. Gray*
Brian McGraw*
MIDDLETON REUTLINGER
401 S. Fourth Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
Fax: (502) 561-0442
dmurrell@middletonlaw.com
egray@middletonlaw.com
bmcgraw@middletonlaw.com

*pro hac vice applications to be submitted*

**Counsel for Plaintiff Oviedo Medical Medical Center, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 3rd, 2019, the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification to the following counsel of record; a copy of same was mailed and/or emailed to:

*/s/Martin B. Goldberg*
Martin B. Goldberg
Emily L. Pincow