UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OVIEDO MEDICAL CENTER, LLC,

                    Plaintiff,

v.                                                   CASE NO. 6:19-cv-01711-WWB-EJK

ADVENTIST HEALTH SYSTEM/SUNBELT, INC.
D/B/A ADVENTISTHEALTH OVIEDO ER,

                    Defendant.

## RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 4.06(b), Defendant Adventist Health System/Sunbelt, Inc. ("AdventHealth") respectfully requests this Honorable Court enter an Order denying Plaintiff Oviedo Medical Center, LLC's ("OMC") Motion for Entry of a Preliminary Injunction (Dkt. 6) (the "Motion").

### I. Summary of Argument

This Court should deny the Motion on procedural and substantive grounds. Procedurally, AdventHealth has never been served with the Motion pursuant to Local Rule 4.06(a)(2), and will not receive the required fourteen-day notice of hearing provided by Local Rule 4.06(a). The Court's September 10, 2019 Order setting the hearing (Dkt. 10) coupled with Local Rule 4.06(a)(3) permitted AdventHealth less than forty-eight hours to collect, draft, and file its counter affidavit and response brief. This departure from the federal and local procedures denied AdventHealth due process in

responding to OMC's request for extraordinary and drastic preliminary injunctive relief. The Motion should be denied on this ground alone at this time.

In an abundance of caution and without waiving its procedural objections, AdventHealth alternatively submits these substantive grounds under which this Court should also deny the Motion. First, OMC failed to provide this Court admissible evidence on which it could grant any relief, let alone the extraordinary, drastic relief requested here. The Complaint is not verified, and the terse five-paragraph Declaration of Tonya Lyles[1] – the only evidence submitted in support of the Motion – falls woefully short of OMC's heavy burden under Rule 65.

Second, the claims underlying OMC's Motion depend on OMC having enforceable trademark rights in the mark "Oviedo ER" (the "Asserted Mark").[2] Those claims fail because the descriptive nature of the Asserted Mark renders it unenforceable. Moreover, OMC's failure to establish ownership of the Asserted Mark is fatal to its infringement claims. The vague assertions regarding its acquisition of the Asserted Mark from an unidentified third party in 2017 – again unsupported by any admissible evidence – cannot meet its heavy burden under Rule 65. Finally, OMC dramatically misconstrues the only suggestion of actual confusion, an *Orlando Business Journal* article submitted without authentication or request for judicial notice. Notwithstanding its inadmissibility, the Court should summarily reject OMC's attempt to conjure actual confusion from the article, which clearly and correctly identifies the parties and their respective facilities.

---

[1] (Dkt. 1-7.)

[2] The Motion focuses exclusively on OMC's infringement claims as the bases for the requested injunctive relief.

## II. Factual Background

AdventHealth is a non-profit health care provider based in Altamonte Springs, Florida. It operates health care facilities across the United States. It is one of the largest non-profit health care systems in the nation. As part of a national branding strategy emphasizing consistency and clarity in patient marketing and communication, AdventHealth adopted a strict and invariable naming protocol for its health care facilities.[3] This protocol features the "AdventHealth" brand name followed by the geographic location of the facility and the category of services provided.[4] For example, emergency room facilities are designated the initials "ER."[5] This protocol is universally applied to all AdventHealth free-standing ER facilities in the United States.[6] In addition to the AdventHealth Oviedo ER facility, AdventHealth operates or plans to open eleven other free-standing emergency care facilities, adherently named: AdventHealth Central Pasco ER, AdventHealth Deltona ER, AdventHealth Four Corners ER, AdventHealth Lake Mary ER, AdventHealth Lake Nona ER, AdventHealth Lenexa ER, AdventHealth Palm Harbor ER, AdventHealth South Overland Park ER, AdventHealth TimberRidge ER, AdventHealth Waterford Lakes ER, and AdventHealth Westchase ER.[7]

All AdventHealth facilities follow this carefully chosen naming convention.[8] AdventHealth has announced plans to open a freestanding emergency room in the City of

---

[3] Ex. A at ¶ 3 (Affidavit of Frank Carter).
[4] *Id.*
[5] *Id.* At ¶ 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*

Oviedo, Florida in the fall of 2019.[9] Consistent with its naming convention, this facility will be called "AdventHealth Oviedo ER."[10] OMC seeks to destroy AdventHealth's deliberate and consistent naming convention by claiming ownership of the descriptive term "Oviedo ER." Such a deviation would have significant negative financial consequences for AdventHealth, and undermine the key characteristic of its national branding strategy – consistency and clarity in patient communication.[11]

### III. Legal Argument

#### A.  Standard for Preliminary Injunction

A preliminary injunction may not issue absent: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015). A preliminary injunction is an "extraordinary and drastic remedy" that cannot be awarded unless the movant clearly establishes each of the four prerequisites. *You Fit, Inc. v. Pleasanton Fitness, LLC*, Case No. 8:12-CV-1917, 2013 WL 521784, at *1 (M.D. Fla. Feb. 11, 2013), *quoting US. v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir.1983).

Preliminary injunctions may not be issued absent notice, which must be given at least fourteen days before hearing. Local Rule 4.06(a). Service of all papers and affidavits

---

[9] Ex. B (print out of https://www.adventhealth.com/hospital-and-emergency-rooms/adventhealth-oviedo-er last visited 9/11/2019).
[10] Exhibit A at ¶4-5.
[11] Ex. A at ¶¶ 7-9.

on which the moving party plans to rely must be served with the motion. Local Rule 4.06(a)(2). Local Rule 4.06 was "designed to prevent the party moving for preliminary injunction from subjecting the non-moving party to a constant barrage of affidavits and other papers, making it nearly impossible for the non-moving part to meaningfully respond and defend." *Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*, 2:05CV564-FTM-33SPC, 2006 WL 1382072, at *2 (M.D. Fla. May 18, 2006).

### B. Noncompliance with Local Rule 4.06

On September 9, 2019, OMC requested the "prompt scheduling of a preliminary injunction hearing." (Dkt. 9.) The next day, September 10, the Court granted OMC's motion and noticed this matter for a hearing on September 18. (Dkt. 11.) Although AdventHealth appreciates the Court's willingness to hear this matter, Rule 65(a)(1) dictates that a party be given notice before the issuance of a preliminary injunction. Local Rule 4.06(a) likewise directs that a preliminary injunction shall not issue unless notice is given "at least fourteen (14) days in advance of the hearing." Because OMC's Motion was never served, AdventHealth has not been put on notice and did not receive the fourteen days' notice required by the local procedures.

OMC's hearing request argues that it emailed a copy of the Motion to Bryan P. Stanley on September 3. (Dkt. 9.) However, an email sent to an attorney who has not appeared, nor consented to electronic service, does not comply with the Federal Rules of Civil Procedure. *See* Fed R. Civ. P. 5(a)(1)(D) (requiring all written motions to be served); *see also* Fed. R. Civ. P. 5(b)(2)(E) (allowing electronic service only if a person consents to it in writing). OMC served the Complaint, but not the Motion, on September

5, 2019. (Dkt. 8.) AdventHealth has not been given sufficient notice as required by the Federal Rules of Civil Procedure and Local Rule 4.06(a). AdventHealth therefore objects to the September 18, 2019 hearing, and requests the Motion be denied for procedural deficiencies at this time.

### C. OMC Failed to Meet its Heavy Evidentiary Burden

OMC's request for extraordinary and drastic temporary injunctive relief is almost entirely unsupported by admissible evidence. In the only submitted declaration available to this Court, Exhibit 5 to the Complaint, Ms. Lyle candidly admits she "started working with Oviedo ER in 2016," and therefore cannot establish continuous use for the previous five years for purposes of proving secondary meaning. (Dkt. 1-7 at ¶ 4.). Other than this five-paragraph declaration, the Complaint and Motion are unverified and present only unsworn allegations and unauthenticated internet sources that cannot form the evidentiary basis for any requested relief – let alone the extraordinary relief requested here. *See Huntley v. Chicago Bd. of Options Exch.*, 1:15-CV-1945-AT, 2015 WL 12698295, at *1 (N.D. Ga. June 8, 2015) ("although Plaintiff attaches documents to his Complaint and Motion, his Complaint is not verified and he does not include an affidavit attesting to any facts in his Complaint or supporting the authenticity of any documents attached thereto."); *see also Wright & Miller*, 11A Federal Practice & Procedure § 2949 (3d ed. 2015) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.").

For example, as additional "evidence" of secondary meaning, OMC claims its facility has served over 135,000 patients and that it has spent in excess of $1.3 million in

advertising and promotional costs, (Dkt. 1 at ¶¶ 26-28); however, these are mere allegations, and OMC offers absolutely no sworn testimony or other evidence to support these figures. OMC's reliance on news articles to support secondary meaning is similarly unavailing. (*Id.* at ¶ 27, Ex. 8.) The news articles are not advertising and do not represent any efforts by OMC to promote the Asserted Mark. Moreover, the articles never use any trademark or service mark symbols when referencing "Oviedo ER." Instead, these articles simply reflect use of "Oviedo ER" in its primary, descriptive sense – the same way that AdventHealth uses the term to describe its emergency care facility in Oviedo, Florida. Examples include "the EMS community is excited to have an ER open in Oviedo" and "Central Florida Regional Hospital Inc. unveiled its new Oviedo ER." (Dkt. 1 at Ex. 8, Pgs. 5, 12.) Such descriptive uses do not constitute trademark usage and cannot be relied upon in establishing secondary meaning. *See Commodores Entm't Corp. v. Thomas McClary*, No. 614CV1335ORL37GJK, 2015 WL 12843872, at *2 (M.D. Fla. Mar. 10, 2015) (noting that descriptive terms may always be used in their primary descriptive sense). The examples of OMC's advertising attached as Exhibits 9, 10, and 11 to the Complaint (Dkt. 1) are all un-dated, and as such, they are useless in any secondary meaning analysis.

### D. OMC Failed to Established a Likelihood of Success on the Merits

If the Court somehow construes the unverified Complaint, Motion, and mostly inadmissible exhibits as evidence on which it can weigh the merits, the Court should still deny the Motion based on OMC's failure to clearly demonstrate a likelihood of success on its underlying claims. *Dutta-Roy*, 810 F.3d at 774. OMC's trademark infringement

claims must fail (1) for lack of allegations or evidence of an ownership interest in the Asserted Mark; and (2) for lack of evidence demonstrating a likelihood of confusion.

### 1. OMC Has Not Established Rights in the Asserted Mark

OMC asserts only common law rights in the Asserted Mark (Dkt. 1 at pp. 20, 24), and must establish ownership of the mark via prior use in commerce. *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011). The Eleventh Circuit applies a two-part test to determine whether a party has proved prior use sufficient to establish ownership: "[E]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* (*quoting New Eng. Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir.1951)).

OMC has presented absolutely no evidence establishing its ownership of the Asserted Mark. OMC's single allegation of ownership is found in Paragraph 18 of its Complaint, wherein it states that "[w]hen Plaintiff acquired the OVIEDO ER branded facility in 2017, it acquired the rights in the OVIEDO ER trade name and service mark from its predecessor." (Dkt. 1 at ¶ 18.) Notably, since the Complaint is not verified, and no supporting affidavits were provided, this statement cannot constitute the required evidence of ownership necessary for the issuance of the requested preliminary injunction. *See Huntley v. Chicago Bd. of Options Exch.*, 1:15-CV-1945-AT, 2015 WL 12698295, at *1 (N.D. Ga. June 8, 2015) (an unverified complaint does not constitute evidence).

OMC's allegation is also conspicuously devoid of any details regarding the acquisition, such as whether it was in writing, exactly what rights were transferred, and

whether it included the requisite assignment of goodwill.[12] In fact, OMC has not bothered to identify the name of the party who established the Asserted Mark and from whom the rights it attempts to enforce here were acquired. Thus, OMC has not pled details sufficient to establish ownership of the Asserted Mark, much less discharged its heavy burden of clearly proving ownership of its common law mark for purposes of this extraordinary preliminary relief. *Crystal Ent.*, 643 F.3d at 1321. Absent this proof, OMC cannot demonstrate the substantial likelihood of success needed to justify issuance of a preliminary injunction. *Dutta-Roy*, 810 F.3d 767 at 774.

### 2. OMC Has Not and Cannot Establish Any Likelihood of Confusion

The Court should also deny the Motion because the unverified Complaint and Motion fail to establish a likelihood that OMC will prevail on its trademark infringement claims by establishing a likelihood of confusion. As this Court noted recently, in determining whether marks are likely to be confused, courts in the Eleventh Circuit consider seven factors: (1) the type of mark, (2) the similarity of the marks at issue, (3) the similarity of the services the marks represent, (4) the similarity of the parties' service outlets and customers, (5) the nature and similarity of the parties' advertising media, (6) the defendant's intent, and (7) any actual confusion. *You Fit*, 2013 WL 521784, at *2 (quotation omitted). The balance of these factors tips decidedly in favor of AdventHealth.

---

[12] "It is well-settled law that the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (internal citation omitted).

<u>Factor 1: The Asserted Mark is unprotectable, or at best, weak</u>

The Asserted Mark describes OMC's location in the City of Oviedo and the emergency services it provides. The descriptive nature of the mark renders it unprotectable, or at best, extremely weak. The leading treatise on trademark law notes that "[d]escriptive geographical terms are in the 'public domain' in the sense that every seller should have the right to inform customers of the geographical origin of his goods." 2 J. THOMAS MCCARTHY, McCarthy on Trademarks §14:1 (2019); *accord* Restatement Third, Unfair Competition §14, comment d (1995) ("merchants should remain free to indicate their place of business or the origin of their goods without unnecessary risk of infringement"). "These geographical terms should remain free for all sellers in that portion of the world to use descriptively with equal honesty." 2 J. THOMAS McCARTHY, McCarthy on Trademarks §14:1 (2019). As a consequence, " ... terms that are descriptive of the geographic location or origin of goods and services are regarded by the law as not being 'inherently distinctive' marks." *Id.* The law only permits geographically descriptive marks to rise to the level of protectable marks if, through usage, the mark has become distinctive via acquisition of "secondary meaning" in the minds of the consuming public. *Id.*

Recognizing that the Asserted Mark is descriptive, OMC instead relies on 15 U.S.C. § 1052(f) to argue that the mark has "acquired distinctiveness" via "substantially exclusive and continuous use" for "over five years."  (Dkt. 1 at ¶ 38.)  Under 15 U.S.C. §1052(f), a prima facie case of acquired distinctiveness can be established only via proof of five years of continuous use of the mark. OMC's claim in this regard is devoid of any

evidence. The only declaration OMC proffers comes from Tonya Lyles, who testifies that since she started working at Oviedo Medical Center in 2016 she personally refers to the emergency room as the "Oviedo ER." (Dkt. 1 at Ex. 5.)  Even putting aside the personal nature of Ms. Lyles' claim (how she refers to the facility is largely irrelevant), it evidences at most only two and a half years of use, well short of the time needed to establish a prima facie case.

The other facts alleged regarding the extent of advertising and continuous use must be discounted as the Complaint is unverified and no supporting declarations have been provided. *See Deltona Transformer Corp. v. Wal-Mart Stores, Inc.*, 115 F. Supp. 2d 1361, 1367-68 (M.D. Fla. 2000) (denying preliminary injunction because absence of consumer survey of secondary meaning resulted in the failure of the "high degree of proof" necessary to establish secondary meaning). The absence of supporting evidence is especially relevant to the allegations concerning OMC's acquisition of the Asserted Mark in 2017. (Dkt. 1 at ¶ 18.) OMC tries to "tack on" the rights of an unnamed processor entity via some unspecified transaction that took place sometime in 2017. (*Id.*) It is only through such tacking that OMC can lay claim to five years of continuous use. But, again, absolutely no evidence is offered establishing this transaction. AdventHealth will undoubtedly seek discovery regarding this mysterious transaction, which may show OMC's actual first use as late as 2017.

In fact, the marketing materials AdventHealth has been able to review establish that the Asserted Mark has only been recently adopted. The www.oviedoer.com domain (last visited 9/11/2019) referenced in the Complaint re-directs consumers to the

"Emergency Care" page of the https://oviedomedicalcenter.com/ (last visited 9/11/2019). The Emergency Care page describes the emergency services provided at Oviedo Medical Center and currently shows OMC's use of the work mark "Oviedo ER[sm] at Oviedo Medical Center."[13] It also shows a stylized version of the mark which OMC has not asserted. An older version of this webpage from August 19, 2017, obtained via the Internet Archive, contains no reference to the Asserted Mark, instead informing consumers that "When you need emergency services, count on Oviedo Medical Center."[14] Thus, contrary to its allegations, and as recently as two years ago,[15] OMC did not view "Oviedo ER" as a trademark. OMC's Motion must be denied given the serious questions raised regarding the validity of the Asserted Mark.

This Court rejected a strikingly similar request for preliminary injunction attempting to enforce a geographically descriptive mark based on more evidence than OMC presented here in *Gulf Coast Commercial Corp.*, 2006 WL 1382072, at *12. In denying the motion for preliminary injunction the Court ruled the plaintiff "failed to carry its burden of persuasion on secondary meaning [without which] Gulf Coast's descriptive or geographically descriptive mark is not protectable." *Id.* As is true here, "the existence or absence of likelihood of confusion becomes irrelevant to the Court's inquiry since

---

[13] Ex. C (print out of https://oviedomedicalcenter.com/service/emergency-care last visited 9/11/2019).

[14] Ex. D (print out of https://web.archive.org/web/20170819155944/https://oviedomedical center.com/service/emergency-care last visited 9/11/2019).

[15] Note that August 19, 2017 appears to be the last time the page was archived. Thus, the exact date of the change is uncertain. AdventHealth will seek discovery regarding the date and substance of these changes.

[Plaintiff] has not shown that the mark is valid and protectable." *Id.* This factor weighs heavily in favor of AdventHealth.

<u>Factor 2: The Marks Are Not Meaningfully Similar</u>

Contrary to OMC's argument, the two marks are not identical. Ample case law establishes that marks should not be dissected when comparing any alleged similarity. Instead, "[t]o determine if two marks are similar, the court 'considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used.'" *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1168 (11th Cir. 2019) (*quoting Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.,* 192 F.3d 1330, 1337 (11th Cir. 1999)). "Similarity must be determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *Sovereign Military Hospitaller v. Fla. Priory of the Knights Hospitallers*, 809 F.3d 1171, 1186 (11th Cir. 2015) (*quoting Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir.1980)). Finally, courts also recognize that "the use of an identical word, even a dominant word, does not automatically mean that two marks are similar." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1183 (11th Cir. 1985).

As evidenced by the parties' respective websites, OMC currently displays its mark as "Oviedo ER at Oviedo Medical Center" while AdventHealth displays its mark as "AdventHealth Oviedo ER"[16] Thus, when one takes into account the "overall impressions that the marks create" and the "manner in which they are used" they are properly compared as follows:

---

[16] Ex. B, C.

**Oviedo ER at Oviedo Medical Center**

**AdventHealth Oviedo ER**

*PlayNation*, 924 F.3d 1168.

These marks are easily distinguishable. One prominent difference concerns the placement of "Oviedo ER," which is clearly reversed between the two marks. Namely, "Oviedo ER" forms the beginning of OMC's mark and the ending of AdventHealth's mark. Furthermore, the dominant part of AdventHealth's mark is unsurprisingly "AdventHealth." This is consistent with its nationwide naming convention.[17] By contrast, the dominant part of OMC's mark is the geographic term "Oviedo." OMC's mark conveys that it is an ER located "at" a larger medical center. The AdventHealth mark, by contrast, conveys that it is a freestanding ER. This reflects the different services provided at the two facilities. OMC's mark is also much longer, consisting of six words, all of which are descriptive. This is compared to AdventHealth's much shorter three-word mark, featuring its trademark "AdventHealth." Given these stark differences, consumers will undoubtedly be able to distinguish the two marks. This factor overwhelmingly favors AdventHealth.

<u>Factor 3: The Services are Different</u>

OMC's Motion agues, without presenting any evidence, that the services performed by the parties are "identical." This is simply not the case, and as noted in Factor 2 above, the difference in services is actually reflected in the two marks. Furthermore, according to its website, OMC is a medical center that "provides a full

---

[17] Ex. A at ¶ 3.

range of healthcare services."[18] The AdventHealth facility, by contrast, is not a medical center and does not offer a full range of healthcare services but rather a freestanding ER.[19]  The differences in the two facilities tips this factor in AdventHealth's favor.

<u>Factors 4-5: OMC Offers no Evidence of Similar Customers or Media Outlets</u>

OMC has produced no evidence establishing that the parties will service the same customers or utilize the same media outlets. Given that the AdventHealth facility has yet to open its doors, such evidence likely does not exist. Nonetheless, OMC cannot merely offer conjecture and legal arguments to support these factors.

<u>Factor 6: No Intent Has Been Established</u>

As explained in the concurrently filed Declaration of Frank Carter, AdventHealth's Vice President of Brand, the AdventHealth Oviedo ER mark was chosen as part of an established naming convention.[20] This naming convention is used on a nationwide basis. Mr. Carter lists no less than eleven area facilities that employ a similar name.[21]  The consistency and logic of AdventHealth's naming convention completely refutes OMC's assertion that AdventHealth intended to capitalize off of OMC's mark. This factor weighs in AdventHealth's favor.

---

[18] Ex. E (print out from https://oviedomedicalcenter.com/home/ last visited 9/11/2019).
[19] Ex. A.
[20] Ex. A at ¶¶ 3-4.
[21] *Id.*

<u>Factor 7: There is no Confusion</u>

OMC cites to only one example of supposed confusion. In doing so, it grossly misrepresents the content of an article from the *Orlando Business Journal* ("OBJ").[22] Contrary to OMC's explanation, the article in question discusses the facilities of *both* parties. Equally important, the article reflects absolutely no confusion between them. As noted by highlights provided below, the article clearly applies the correct name to both OMC's facility and the AdventHealth facility.



A review of the full content of the OBJ article reveals that, contrary to OMC's claims, it does not evidence any confusion. Any repugnancy between the general allegations of material facts in a complaint and an exhibit thereto should be resolved in

---

22 Ex. F (Print out of the article along with the associated "slide show" from https://www.bizjournals.com/orlando/news/2019/06/12/metro-orlandos-number-of-freestanding-ers-on-the.html last visited 9/11/19).

favor of the exhibit. *See Harry Pepper & Assocs., Inc. v. Lasseter*, 247 So. 2d 736, 737 (Fla. 3d DCA 1971) (holding an inconsistency between a general allegation in a complaint and the specific facts revealed by an exhibit render the pleading objectionable and subject to dismissal).

The OBJ article actually raises further serious questions regarding OMC's ownership claims over the "Oviedo ER" mark. As illustrated above, the OBJ article actually lists HCA Healthcare Inc. as the operator of the "Oviedo ER" and not OMC. This only underscores the need for AdventHealth to take discovery regarding the trademark acquisition referenced in Paragraph 18 of the Complaint. The OBJ article also labels Plaintiff's facility as "Oviedo ER (Now Oviedo Medical Center)," hereby raising additional questions about whether the Asserted Mark has been changed and whether the mark is being used consistently. Finally, a review of the 23 different ERs featured in the article shows that many of them follow a similar naming protocol. One is left to wonder how many of these facilities will be subject to trademark infringement claims by OMC. In sum, OMC has provided no evidence of confusion. As such, this factor tips in favor of AdventHealth.

### E. OMC Failed to Establish the Remaining Elements Necessary for a Temporary Injunction

#### 1. Weighing of Potential Harm Favors Advent Health

A plaintiff seeking injunctive relief "must actually show based on the facts of [the] case that irreparable harm was 'likely,' not merely possible, in the absence of an injunction." *Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016) (*citing Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20–22, 129 S.Ct.

365, 374–75, 172 L.Ed.2d 249 (2008)). "What matters is that the court exercises its discretion in light of the facts of the case and does not simply apply a categorical rule." *Id.*; *see also Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016) (stating "[i]n light of the Supreme Court's holding in eBay, a presumption of irreparable harm cannot survive.")  "[T]he Eleventh Circuit has recently emphasized that Plaintiffs have the burden to show a likelihood of irreparable harm based on independently proved facts." *Island Stone Int'l Ltd. v. Island Stone India Private Ltd.*, No. 616CV656ORL40KRS, 2017 WL 5632719, at *6 (M.D. Fla. Nov. 3, 2017), report and recommendation adopted, No. 616CV656ORL40KRS, 2017 WL 5608939 (M.D. Fla. Nov. 21, 2017) (*citing Hoop*, 648 Fed.Appx. at 985 (11th Cir. 2016) (as persuasive authority). Contrary to OMC's argument, it is not "generally recognized . . . that infringement by its very nature causes irreparable harm." Motion at Pg. 22. To the contrary, OMC must establish "independently proved facts" supporting irreparable injury. In this, OMC failed.

Likewise, AdventHealth has presented evidence that it will be significantly harmed by the issuance of an injunction. First, the forced departure from its deliberate, universally employed naming protocol will undermine the key characteristic of its national branding strategy – consistency and clarity in patient communication. Ex. A at ¶¶ 3, 7-8. Moreover, changing the name of its facility in the run up to opening may delay or cause need for the refiling of licensing and certification applications necessary to provide emergency health care services to the Oviedo community. *Id.* at ¶ 9.

### 2. *The Public Interest Weighs Against the Issuance of an Injunction*

The public interest would not be served by allowing Plaintiff to appropriate a geographic term to the determinant of legitimate competitors and the public at large – especially in the provision of emergency medical care. *See New York Style Bagel Chip Co. v. That's Entertainment, Inc.*, 1992 WL 46854 at *11 (E.D. Pa. 1992) (finding that the public interest would be disserved by enjoining the use of the geographic term "New York" for bagel products).

Plaintiff is seeking to prevent AdventHealth from informing the public of two critical pieces of information: the nature and location of the services it provides. If enjoined, AdventHealth could not inform the public that it is an emergency room operating in the City of Oviedo. This would be a tremendous disservice to members of the public seeking relevant information about their medical care.

### F. A Sizable Bond is Required if an Injunction Issues

OMC utilizes circular reasoning in an effort to avoid the bond required by Rule 65. The purpose of a bond is to protect the interest of the opposing party in the event the opposing party ultimately prevails. Simply arguing that the alleged infringement is "blatant" is not a sufficient reason to avoid the requirement of the rule. Additionally, the Declaration of Frank Carter discusses the considerable time and expense that will be incurred by AdventHealth in the event the requested injunction is issued.[23] Should the Court issue an injunction AdventHealth respectfully requests an evidentiary hearing be set to determine the amount of the required bond.

---

[23] Ex. A at ¶¶ 7-10.

### IV. Conclusion

OMC's request for the issuance of a Preliminary Injunction should be denied.

WHEREFORE, AdventHealth requests this Court enter an order denying OMC's

Motion for Preliminary Injunction.

Respectfully submitted this 11th day of September, 2019,

/s/ *Mayanne Downs*
Mayanne Downs
Florida Bar No. 754900
Primary: mayanne.downs@gray-robinson.com
Secondary: kathy.savage@gray-robinson.com
Michael J. Colitz, III
Florida Bar No. 164348
Primary: michael.colitz@gray-robinson.com
Secondary: jessica.gonzalez@gray-robinson.com
GrayRobinson, P.A.
P.O. Box 3068
Orlando, Florida 32802
Telephone: (407) 843-8880
Facsimile: (407) 244-5690
Jason Zimmerman
Florida Bar No. 104392
Primary: jason.zimmerman@gray-robinson.com
Secondary: cindi.garner@gray-robinson.com

*Attorneys for Defendant,*
*ADVENTIST HEALTH SYSTEM/SUNBELT, INC.*
*D/B/A ADVENTISTHEALTH OVIEDO ER*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2019, a true and correct copy of the foregoing was filed through the CM/ECF system which will serve an electronic copy on:

*Counsel for Plaintiff, Oviedo Medical Center LLC*

Martin B. Goldberg, Esq.
Emily L. Pincow, Esq.
Lash & Goldberg, LLP

20

Miami Tower
100 SE 2nd Street, Suite 1200
Miami, Florida  33131-2158
mgoldberg@lashgoldberg.com
epincow@lashgoldberg.com

and a copy was emailed and mailed via United States first class mail to:

*Counsel for Plaintiff, Oviedo Medical Center LLC*

Dennis D. Murrell
Elisabeth S. Gray
Brian McGraw
Middleton Reutlinger
401 S. Fourth Street, Suite 2600
Louisville, Kentucky  40202
dmurrell@middletonlaw.com
egray@middletonlaw.com
bmcgraw@middletonlaw.com

/s/ *Mayanne Downs*
Mayanne Downs
Florida Bar No. 754900

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Affidavit of Frank Carter |
| B | Print out of https://www.adventhealth.com/hospital-and-emergency-rooms/adventhealth-oviedo-er last visited 9/11/2019 |
| C | Print out of https://oviedomedicalcenter.com/service/emergency-care last visited 9/11/2019 |
| D | Print out of https://web.archive.org/web/20170819155944/https://oviedomedical center.com/service/emergency-care last visited 9/11/2019 |
| E | Print out from https://oviedomedicalcenter.com/home/ last visited 9/11/2019 |
| F | Print out of the article along with the associated "slide show" from https://www.bizjournals.com/orlando/news/2019/06/12/metro-orlandos-number-of-freestanding-ers-on-the.html last visited 9/11/19 |