UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| OVIEDO MEDICAL CENTER, LLC | ) | |
| | ) | Case No.: 6:19-cv-01711-WWB-EJK |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVENTIST HEALTH SYSTEM/SUNBELT, | ) | |
| INC. d/b/a ADVENTHEALTH OVIEDO ER | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116 of the Lanham Act, Plaintiff,

Oviedo Medical Center, LLC ("Plaintiff"), by counsel, respectfully requests that the Court

enter a preliminary injunction preventing Defendant, Adventist Health System/Sunbelt, Inc.

d/b/a AdventHealth Oviedo ER ("Defendant"), from further use of the term and phrase

"Oviedo ER" in any fashion in connection with its soon-to-be opened emergency care facility.[1]

## INTRODUCTION

Defendant is infringing Plaintiff's OVIEDO ER trademark and should be enjoined from

any further infringement.   Since 2013, Plaintiff and its predecessor have operated an

emergency care facility providing related health care services using the trade name and service

mark OVIEDO ER.  Plaintiff was the first of its kind in its trade area and, over the years, has

---

[1] Plaintiffs withdrew their original Motion for Entry of a Preliminary Injunction [D.E. 17] in light of procedural notice and other matters raised by Defendant.  Thereafter, the Court issued a notice canceling the September 18, 2019 hearing [D.E. 21].  The undersigned counsel contacted opposing counsel, and the parties have been in contact regarding attempting to coordinate a mutually agreeable date for a hearing on this Amended Motion.

developed a strong reputation and goodwill in and to its OVIEDO ER mark, resulting in that mark serving to distinguish Plaintiff from others in the market.

Defendant has recently entered the same market, constructing a competing emergency care facility using the "Oviedo ER" name and mark within one mile of Plaintiff's facility that is scheduled to open on October 6, 2019. Defendant's use of "Oviedo ER" infringes Plaintiff's senior trademark rights and otherwise constitutes unfair competition because such use is likely to cause confusion among the relevant consuming public between the competing facilities. As a result of this confusion, Defendant is directly trading on the goodwill Plaintiff has established in its OVIEDO ER mark and is causing irreparable harm to Plaintiff.

Plaintiff is entitled to immediate injunctive relief. To preserve the *status quo*, Defendant should be enjoined from proceeding with the full-scale operation of a competing emergency care facility using the exact same name as Plaintiff in the same market. Otherwise, consumers and, more importantly, health and emergency services providers, will be highly confused as to the source of the services offered under identical names in the same trade area. As such, a preliminary injunction should be issued, prior to the October 6, 2019 opening date, until a trial on the merits can be held.

<u>**RELEVANT FACTUAL BACKGROUND**</u>

<u>**Plaintiff and its OVIEDO ER Mark**</u>

Plaintiff, either on its own or via a predecessor entity, has been providing emergency room related services under the trade name/service mark OVIEDO ER since the first free-standing emergency care facility was opened in Oviedo, Florida on or about November 25, 2013. *See* Affidavit of Cathleen Droke, attached hereto as <u>**Exhibit A**</u> ("Droke Aff."), ¶¶ 6-7.

Even prior to the opening of the OVIEDO ER facility, Plaintiff, via its predecessor, engaged in promotion and branding of the OVIEDO ER name and mark.[2]  These efforts included registration of the domain www.oviedoer.com in November 2012 and operation of the www.oviedoer.com website.  *Id.*, ¶ 8.  Plaintiff has even applied to register the mark OVIEDO ER with the United States Patent and Trademark Office.[3]  As of this filing, the applications have passed through examination and publication with no opposition and registration will issue in the very near future.

The OVIEDO ER name and mark has become synonymous with Plaintiff and is well-known in the Plaintiff's trade area.  *See* Affidavit of Janet H. Livingston, attached hereto as **Exhibit C** ("Livingston Aff."), ¶¶ 13, 16-17; Affidavit of Lars White, attached hereto as **Exhibit D** ("White Aff."), ¶¶ 18-19.  When Plaintiff acquired the OVIEDO ER branded facility in 2017, it acquired the rights in the OVIEDO ER trade name and service mark from its predecessor.[4]  *See* Affidavit of KC Donahey, attached hereto as **Exhibit E** ("Donahey Aff."), ¶¶ 7-9.  The OVIEDO ER mark has been prominently used in facility signage and in other promotional materials since the facility was opened in 2013.  *See* White Aff., ¶ 19; Livingston Aff., ¶ 13; Droke Aff., ¶¶ 7-8 and Ex. 1.  Since the opening of the Oviedo ER branded facility,

---

[2] The Oviedo ER facility was originally owned and operated by Central Florida Regional Hospital, Inc. ("Central Florida Regional Hospital"), which originally filed an Application for Registration of Fictitious Name for OVIEDO ER with the Florida Secretary of State, Division of Corporations, on September 19, 2013.

[3] Plaintiff has filed two separate applications, including an application for the word only mark OVIEDO ER (App. Serial No. 88/366,385) and for a stylized version of the term OVIEDO ER (App. Serial No. 88370236).  Copies of the official Trademark Office TSDR records for Plaintiff's two pending trademark applications are attached as collective **Exhibit B**.

[4] On January 30, 2017, Central Florida Regional Hospital conveyed the OVIEDO ER facility and assets, which included the intellectual property rights in and to the trade name/service mark OVIEDO ER, to Plaintiff.  *See* Quitclaim Deed, Nunc Pro Tunc, and Bill of Sale, Exhs. 2-4 to Donahey Aff.  Since the January 30, 2017 acquisition, Oviedo Medical Center has continued to use the OVIEDO ER Marks to identify and distinguish its facility within the consuming public. Donahey Aff., ¶ 10.

consumers and the media have recognized the mark as signifying the Plaintiff and its emergency care facility. *See* Livingston Aff., ¶¶ 13, 16-17; White Aff., ¶¶ 18-19; Droke Aff., ¶¶ 10-30 and Exhs. 3-22. Even after Oviedo Medical Center opened in 2017, Plaintiff continued using the service mark OVIEDO ER and the community continues to identify the facility by that name. *See* Livingston Aff., ¶¶ 13, 16-17; White Aff., ¶¶ 18-19; Droke Aff., ¶¶ 9-12.

**Defendant and its Infringing Use of the OVIEDO ER Mark**

Upon information and belief, Defendant is a faith-based health care system sponsored by Seventh-day Adventist Church, headquartered in Altamonte Springs, Florida and operates facilities within nine states in the United States, including Florida. *See* Complaint, ¶ 39. In the fall of 2018, Defendant sent out invitations announcing the groundbreaking of a new planned facility on November 1, 2018 under the name "FLORIDA HOSPITAL OVIEDO ER." *See* Donahey Aff., ¶¶ 13-14 and Exh. 5. On or about November 1, 2018, the announced groundbreaking took place on property located only about a mile from Plaintiff's OVIEDO ER branded facility, also on Red Bug Lake Road. *See* Droke Aff., ¶ 32; Donahey Aff., ¶ 14 and Exh. 6. Defendant's proposed OVIEDO ER facility is going to be a freestanding emergency care facility that would operate in direct competition to Plaintiff in the exact same trade area and market and, in fact, on the very same street. *See* Donahey Aff., ¶ 15; White Aff., 25; Livingston Aff., ¶ 18.

As early as November 5, 2018, the media had reported the groundbreaking and reference was made to Defendant's facility as a new OVIEDO ER and even referenced Plaintiff's OVIEDO ER branded facility in the same article. *See* Donahey Aff., ¶ 16 and Exh.

6.  Further, since it announced the potential opening of its OVIEDO ER facility, Defendant has continually referred to its facility as OVIEDO ER in marketing and promotional material.  *See* Donahey Aff., ¶¶ 17-18 and Exhs 7 and 8; Livingston Aff., ¶ 18.

Defendant even maintains Internet search result advertisements which place particular emphasis on the exact term "Oviedo ER."  *See* Droke Aff., ¶ 33 and Exh. 24.  When a person searches for the term "AdventHealth Oviedo ER" on Google one of Defendant's advertisements appears in the results as follows:



*See Id*.

**<u>Plaintiff Notifies Defendant of its Infringing Activity</u>**

After learning of Defendant's actions and greatly concerned about the possibility of confusion, on November 16, 2018, Plaintiff informed Defendant by letter that Plaintiff had been using the OVIEDO ER name and mark to brand its freestanding emergency care facility since 2013, and Defendant's use of the term OVIEDO ER in any context would cause "significant confusion."  Donahey Aff., ¶ 19 and Exh. 9.  Since Defendant had no permission from Plaintiff to use the term OVIEDO ER, or anything confusingly similar, Plaintiff demanded that Defendant cease and desist from any further use of the term and suggested the parties work together to resolve the matter in a constructive, amicable manner.  *Id.*

On December 6, 2018, counsel for Defendant responded and represented that Defendant would rebrand to the name "ADVENTHEALTH OVIEDO ER" when referencing its emergency room facility.  *See* Donahey Aff., ¶ 20 and Exh. 10.   On January 2, 2019, counsel for Plaintiff replied and stated that Plaintiff has been "the only entity using OVIEDO ER as a trade name and service mark in the vicinity at issue since 2013" and is the only party to establish secondary meaning pursuant to Section 2(f) of the Trademark Act.   *See* Donahey Aff., ¶ 21 and Exh. 11. Plaintiff's counsel further articulated Plaintiff's objection to Defendant's use of the rebranded name "ADVENTHEALTH OVIEDO ER" or any other name that wholly incorporates the exact "OVIEDO ER" mark and name in any fashion.  *Id.*  Having received no response, Plaintiff's sent a follow up letter on April 17, 2019, reiterating its objection to Defendant's planned use of the name "ADVENTHEALTH OVIEDO ER", which has been ignored by Defendant.  *See* Donahey Aff., ¶ 22 and Exh. 12.

**Defendant's Continued Defiance of Plaintiff's Trademark Rights**

In further violation of Plaintiff's rights, on or about May 30, 2019, and after receiving repeated notice of Plaintiff's objections, Defendant erected a billboard on the property of its future free-standing emergency room.  *See* Donahey Aff., ¶ 23 and Exh. 13.  On June 13, 2019, the Orlando Business Journal published an article about Defendant's new facility that featured a picture of Plaintiff's OVIEDO ER branded facility – demonstrating confusion between the two companies.  *See* Donahey Aff., ¶ 25 and Exh. 14.   In addition, despite knowing of Plaintiff's claimed rights to the OVIEDO ER mark and name, on or about June 24, 2019, Defendant registered the domain name <u>workatoviedoer.com</u>> through GoDaddy.com, and is

using that domain to redirect consumers to Defendant's website promoting its "Oviedo ER." *See* Donahey Aff., ¶ 26.

Based on the foregoing, and as set forth below, Defendant's use of Plaintiff's OVIEDO ER name and mark is likely to cause confusion as to the source of the goods and services associated with the mark, and/or is likely to suggest sponsorship of the services and/or affiliation between Plaintiff and Defendant.

## ARGUMENT

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. *See* Fed. R. Civ. P. 65(a). To obtain a preliminary injunction in the Eleventh Circuit, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citations omitted). In the trademark infringement context, a preliminary injunction operates to prevent a defendant from continuing to "free ride" on a plaintiff's efforts to promote its brand and establish goodwill. *Kreation Juicery, Inc. v. Shekarchi*, 2014 WL 7564679 at *12 (C.D. Cal., Sept. 17, 2014). That is exactly what is happening in this case.

As discussed in detail below, each of the four prongs for the issuance of a preliminary injunction weighs heavily in favor of Plaintiff in this case and a preliminary injunction should be entered so that the *status quo* may be maintained and irreparable harm to the Plaintiff, and most importantly the public, avoided.

## I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS INFRINGEMENT-RELATED CLAIMS

Plaintiff seeks preliminary injunctive relief on its claims for (1) trademark infringement and unfair competition under §43(a) of the Lanham Act, 15 U.S.C. §1125(a); (2) common law trademark infringement and unfair competition under Florida law; and (3) violation of the Florida Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq.* – all based on Plaintiff's ownership of its OVIEDO ER mark and Defendant's use of the exact term, or any mark which includes or incorporates, the phrase OVIEDO ER for competing services in the same geographic market.  Plaintiff is likely to succeed on these claims and a preliminary injunction should be granted.

Section 43(a) of the Lanham Act makes it unlawful for any person "who, on or in connection with any goods or services ... uses in commerce any word, ... false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125(a).  Section 43(a) forbids unfair trade practices involving infringement of trademarks, service marks, or trade dress, even in the absence of federal trademark registration. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

To prevail on a claim for trademark infringement (false designation of origin) and unfair competition under Section 43(a) of the Lanham Act, under corresponding state and common law, and under the FDUTPA[5], Plaintiff must prove that (1) it is the owner of prior trademark

---

[5]The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition "are the same as those for federal claims of trademark infringement and unfair competition." *Edge*

rights to the OVIEDO ER mark; and (2) there is a likelihood of confusion between Plaintiff and Defendant based on Defendant's use of the term OVIEDO ER.  *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).[6] As with trademark infringement claims, the determining factor for § 43(a) and related state law claims is "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *See Edge Sys.*, 186 F. Supp. 3d at 1348 (citing *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044 at *5 (S.D. Fla. Apr. 23, 2014)).  Here, Plaintiff owns valid and protectable trademark rights to its OVIEDO ER mark – which was in use years before Defendant ever began marketing its competing services.  Further, there is a high likelihood of consumer confusion based on the Defendant's use of the OVIEDO ER mark.

### A.      Plaintiff Owns Valid Rights to the OVIEDO ER Mark

In order to succeed on the merits, Plaintiff must first establish that it owns protected trademark interests to the OVIEDO ER mark.  *See Am. Tele. and Comm. Corp. v. Am. Comm. and Tele., Inc.*, 810 F.2d 1546, 1550 (11th Cir. 1987).  Actual substantive rights to a trademark arise based on its use in commerce and its distinctiveness.  *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522 (11th Cir. 1991). "Use in commerce" means "the bona fide use of a mark in the ordinary course of trade."  With respect to services, a mark is deemed

---

*Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1359 (S.D. Fla. 2016); and *Investacorp, Inc., v Aarabian Investment Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (trademark infringement and unfair competition under the same standard); and *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F. 3d 1338 (11th Cir. 2012) (same standard for FDUTPA claims).

[6] *See also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001); and *Davidoff & Cie, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1300-01 (11th Cir. 2001) (holding that "[i]n order to succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendant used the mark in commerce without its consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake").

used in commerce when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce." *See* 15 U.S.C. § 1127.

Further, trademark protection "is only available to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). While some marks are inherently distinctive; others acquire distinctiveness (or "secondary meaning") by becoming associated in the minds of the public with the products or services offered by the proprietor of the mark. *Two Pesos*, 505 U.S. at 768–69. A plaintiff can make a *prima facie* showing of "secondary meaning" by showing that it has had substantially exclusive and continuous use of the mark for five years. *See* 15 U.S.C. § 1052(f); and *Welding*, 509 F.3d at 1358.

Otherwise, whether a name has attained secondary meaning depends on the length and nature of the name's use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business, and the degree of actual recognition by the public that the name designates the proprietor's product or service. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Finally, a party's intentional copying of a mark is highly indicative that the mark has acquired secondary meaning. *See Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983) (explaining that although "proof of intentional copying," while not alone sufficient, "is probative evidence on the secondary meaning issue").

As an initial matter, rights have been established in and to the OVIEDO ER mark based on the continuous, substantial and exclusive use of the mark in commerce and in the State of Florida by Plaintiff and its predecessor, Central Florida Regional Hospital. The mark has been

used in advertising and promotions in connection with healthcare, medical, and emergency medical related services since the facility opened in November, 2013. *See* Livingston Aff., ¶¶13; 16; Droke Aff., ¶¶ 7-9. Since the OVIEDO ER facility opened in November 2013, the OVIEDO ER mark has been prominently displayed by Plaintiff on signage outside of the facility and in advertising and marketing for the facility. White Aff., ¶ 19; Droke Aff., ¶ 7 and Exh. 1; Livingston Aff., ¶ 13. Because there has been exclusive and continuous use of the OVIEDO ER mark since 2013 – which represents over five (5) years of continuous use, Plaintiff is entitled to a presumption that its OVIEDO ER mark has acquired distinctiveness. *See* 15 U.S.C. §1052(f) (stating that proof of "substantially exclusive and continuous use" of a designation as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made may establish *prima facie* evidence that the mark has acquired distinctiveness).

Further, priority is not at issue in that the OVIEDO ER mark has been in use since 2013 and Defendant only began promoting its competing Oviedo ER facility in the fall of 2018. *See* Donahey Aff., ¶¶ 14-17. *See e.g., Edge Sys.*, 186 F. Supp. 3d at 1345 (no issue as to priority where plaintiff continuously operated under the trade name for 14 years prior to defendant's entry into the market using a similar name).

There is likewise no issue as to this Plaintiff's ability to claim rights dating back to its predecessor's use of the OVIEDO ER mark in light of the valid conveyance of rights from Central Florida Regional Hospital to Plaintiff in 2017, as documented in the Quitclaim deed, bill of sale, and intellectual property assignment attached as Exhibits 2-4 in the Donahey Aff. (Ex. E). It is well established that an assignee of trademark rights steps into the shoes of its

predecessor and acquires all the legal advantages of the assigned marks. *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307 (11th Cir. 1999).

In addition, even though the OVIEDO ER mark has acquired distinctiveness based on its over five (5) years of continuous and substantially exclusive use, further evidence suggests that the public has come to associate the OVIEDO ER mark and name with Plaintiff. Plaintiff and its predecessor have collectively spent in excess of $1.3 million in advertising and promotional costs related to the promotion of the OVIEDO ER branded facility since it opened in 2013. *See* Droke Aff., ¶ 30. In that time, Plaintiff has served over 135,000 patients. *See* Donahey Aff., ¶ 12. There has been significant media coverage over the years since Plaintiff opened that has recognized the OVIEDO ER mark and the connection between that mark and Plaintiff. *See id.* ¶ 16; Droke Aff., ¶ 9 Finally, it can be inferred that Defendant is intentionally and/or willfully infringing Plaintiff's rights and trading off the goodwill associated with the OVIEDO ER mark as set forth more fully later in this memorandum. Plaintiff, therefore, has demonstrated that it is likely to succeed on its claim of ownership to valid trademark rights in and to the OVIEDO ER mark.

**B.      Defendant's Use of the OVIEDO ER Mark is Likely to Cause Confusion**

The "*sine qua non*" of trademark infringement is "likelihood of confusion" on the part of the relevant consuming public as to the source of the goods or services at issue. *Fila U.S.A., Inc. v. Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995). Indeed, the cornerstone of a likelihood of confusion analysis is based on whether the ordinary, prudent consumer in the marketplace would likely be confused. 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4th Ed., § 23.63. Notably, in assessing the likelihood of confusion, the inquiry

is not limited to whether one product or service would be mistaken for the other but includes any false or misleading suggestion of <u>any affiliation or relationship amongst companies</u> or their products or services.  *See* 15 U.S.C. § 1125(a) (emphasis added) (rendering actionable any usage of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person").

The Eleventh Circuit generally uses a seven-factor test in determining whether there is a likelihood of confusion.  These factors, as set forth in the *Frehling* case, include: (1) the type or strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) any evidence of actual confusion.  *Frehling*, 192 F.3d at 1335.  These factors are weighed and analyzed in light of the totality of the circumstances.  *Id*.  The plaintiff need not prevail on all seven factors in order to establish a claim for infringement.  *Id*. at 1340.  The relevant importance of each factor is determined on a case-by-case basis.  *Edge Sys*., 186 F. Supp. 3d at 1348–49.[7]

While courts in the Eleventh Circuit look to all of the factors, there is recognition that the likelihood of confusion is greatest "when the infringer uses the exact trademark as the plaintiff." *Opticians Ass'n. of America v. Independent Opticians of America*, 920 F.2d 187,

---

[7] *See also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) (recognizing that application of the multi-factor test "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance'").

195 (3rd Cir. 1990).  In such cases, the "likelihood of confusion is inevitable." *Id*.  In fact, a leading treatise on trademark law notes that cases where a defendant uses an identical mark are "open and shut" and do not involve protracted litigation to determine liability for trademark infringement." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:3 (1996).  This is especially true where the same mark is being used in connection with identical or competing services.   Here, Defendant is using the exact term OVIEDO ER in connection with competing services.  As a result, this should be an "open and shut" case of likelihood of confusion.  Nonetheless, an analysis of <u>all</u> of the factors shows that there is a strong likelihood of confusion.

### 1. The Marks are Identical

In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337.  As stated above, a likelihood of confusion is even greater when an infringer uses the exact trademark.  *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, 2012 WL 2873733 at ** 8-11 (S.D. Fla. 2012).  Courts "look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."  *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir. 1982).  Here, the parties are both using the identical term OVIEDO ER. This factor weighs heavily in favor of a finding of likelihood of confusion.

### 2. The Services are Identical

The likelihood that two marks will be confused is greater when the marks are used on the same or similar products. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 150 (11th Cir. 1985).  Here, the services performed and/or to be performed by the parties are identical in that both parties provide competing emergency care facilities. They are both operating these competing emergency care facilities within a mile of each other on the same street.  This factor also weighs heavily in favor of Plaintiff.

### 3.  Sales Methods Are Similar

If products are sold through the same trade channels, to the same customers, there is a greater chance there will be a likelihood of confusion between the marks.  *See Frehling*, 192 F.2d at 1339. "This factor takes into consideration where, how, and to whom the parties' products are sold."  *Id*.   Here, the parties are offering their competing services to the exact same customer base in the exact same geographic market.  This factor also weighs heavily in favor of a finding of likelihood of confusion.

### 4. There is Similar Advertising

If two parties are employing similar marketing strategies for their respective products, there is a greater probability of confusion.  *See Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).  In this case, the complete record of the parties' advertising has not yet been established.   However, Plaintiff advertises using its OVIEDO ER mark online, through signage, and in print advertisements.  *See* White Aff., ¶ 19; Livingston Aff., ¶ 13; Droke Aff., ¶¶ 7-8. Defendant also promotes its facility through signage and online marketing strategies and activities.  Since the parties engage in similar advertising,

this factor also supports a finding of likelihood of confusion.

### 5. The Mark is Strong

To determine the strength of a mark, the Eleventh Circuit considers the length and manner of its use, whether it has reached incontestable status, the type of mark and the degree to which third parties make use of the mark. *Frehling*, 192 F.3d at 1335-36. Where a mark has been used for a long period of time and public recognition of the mark then the mark is considered strong. *See e.g., Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir.) (holding that extensive advertising, length of time in business and public recognition increase the strength of a mark). Finally, the lack of third party use of similar marks illustrates the strength of the mark for purposes of the likelihood of confusion analysis.

The OVIEDO ER mark has been in use since November, 2013. That use has been exclusive in that until Defendant, no other facility in the area has used the term "Oviedo ER" in connection with the promotion of their facility or as the name of the facility. The media has also referred to the OVIEDO ER mark as signifying the source of Plaintiff's services. *See* Livingston Aff., ¶¶ 13; 16-17; White Aff., ¶¶ 18-19; Droke Aff., ¶¶ 9-31. Plaintiff has spent over $1.3 million in advertising costs to promote the OVIEDO ER branded facility since it opened in 2013 and has served over 135,000 patients in that time. *See* Donahey Aff., ¶ 12. All of this leads to the conclusion that the OVIEDO mark is strong and, as such, this factor weighs in favor of Plaintiff.

### 6. Defendant Intends to Infringe

The intent factor generally focuses on whether the allegedly infringing party adopted its mark with the intent to derive an unearned benefit from the senior party's efforts. *See*

*Frehling*, 192 F.2d at 1340.  This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation."  *Id*. Likelihood of confusion can be demonstrated as a matter of law if this factor is present.  *Babbit*, 38 F.3d 1179 (11th Cir. 1994).  Intent to benefit from the plaintiff's mark can be present without direct evidence so long as it may be found that a jury might have inferred that a defendant purposely chose a mark which was very similar to the trademark owners.  *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983).

Defendant could have chosen a number of alternative names when it decided to name its facility but it instead chose to use the exact same name as the Plaintiff. And then, when it represented that it would "rebrand", the proposed rebranded name, "AdventHealth Oviedo ER" wholly incorporated the entirety of Plaintiff's OVIEDO ER mark.  Plaintiff even proposed that Defendant use alternative names such as "AdventHealth ER at Winter Park ….", "AdventHealth ER in Oviedo", or simply "AdventHealth ER."  *See* Exhs. 9, 11 and 12 to Donahey Aff. However, Defendant refused to use one of these alternative names and/or otherwise comply with Plaintiff's requests.  *See* Exh. 10 to Donahey Aff.  In fact, at the time of the filing of this Action, Defendant's website prominently refers to its new facility as "Oviedo ER."   *See* Donahey Aff., ¶ 17; Droke Aff., ¶ 34.  Further, Defendant is currently recruiting employees for its facility which it refers to as "Oviedo ER."  *See* Droke Aff., ¶ 33. Moreover, Defendant is referencing its new facility in the community as "Oviedo ER." *See* Donahey Aff., ¶ 24.  Even worse, Defendant not only continued to use the exact term OVIEDO ER after receiving complaints from Plaintiff, but also increased that use, for instance, by registering and using the domain name <u>workatoviedoer.com</u> (*see* Droke Aff., ¶ 33) and

focusing internet marketing strategies on generating search result advertisements which place particular emphasis on the term "Oviedo ER." *See id.,* ¶ 33 and Exh. 24. Accordingly, it can be inferred that Defendant has chosen to use and has continued to use the exact term OVIEDO ER solely to capitalize off the goodwill Plaintiff has established in and to its OVIEDO ER mark. This factor also shows a likelihood of confusion.

### 7. There has Already Been Actual Confusion

Evidence of actual confusion is not necessary to support a finding of a likelihood of confusion. *See Remy Martin*, 756 F.2d at 1539. It is, however, the best evidence of a likelihood of confusion between two marks. *See Frehling*, 192 F.2d at 1340.

Here it cannot be expected that Plaintiff would be able to produce significant evidence of actual confusion yet since Defendant has not yet opened its facility. However, there has been some confusion taking place in the media. The *Orlando Business Journal* published an article referencing Defendant's entry into the market and within this article the lead gallery photo featured Plaintiff's OVIEDO ER branded facility. *See* Donahey Aff., ¶ 25 and Exh. 14. This apparent confusion further compels a finding of likelihood of confusion.

All of the factors weigh in favor of a finding of a likelihood of confusion in this case.

## II. PLAINTIFF WILL BE IRREPARABLY HARMED IF DEFENDANT'S INFRINGING ACTIVITY IS ALLOWED TO CONTINUE

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Mycoskie, LLC*

*v. 2018prettycat*, 2019 WL 1921998 at *4 (S.D. Fla. Apr. 30, 2019).  Because of the inherent difficulty of valuing the damage to such intangibles as the goodwill or business reputation, courts routinely grant injunctions in trademark actions.  *See McDonald's Corp.*, 147 F.3d at 1310 (holding "trademark actions 'are common venues for the issuance of preliminary injunctions'").

For years, the Eleventh Circuit (along with many other circuits) held that courts should "extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *See Uber Promotions, Inc. v. Uber Techs., Inc.,* 162 F. Supp. 3d 1253, 1261 (N.D. Fla. 2016) (citations omitted).  The appropriateness of this presumption has been called into doubt, however, after the Supreme Court's decision in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).  *See Uber*, 162 F. Supp. 3d at 1261. Nonetheless, the Eleventh Circuit has provided recent guidance and given courts under its charge leeway to effectively presume irreparable harm based on the facts and circumstances of the particular case and after consideration of the equities involved.  *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016) (holding a presumption of irreparable injury may still be "an appropriate exercise of [the district court's] discretion in light of the historical traditions" where "the particular circumstances of the instant case bear substantial parallels to previous cases" in which irreparable harm has been found).

While there is an argument that irreparable harm can be presumed in this case since there is a high probability of confusion, Plaintiff nonetheless presents evidence of irreparable harm through its supporting Affidavits. Allowing the Defendant to operate a competing emergency room facility under the exact same name as Plaintiff (or any mark which includes

or incorporates Plaintiff's name) will undoubtedly result in the loss of control over Plaintiff's reputation and goodwill.  The biggest example of the potential irreparable harm can be seen in the example of a situation where a patient is taken to the wrong "Oviedo ER" facility.  If that patient is dissatisfied with the services provided at Defendant's facility and if the confusion is never dispelled then that dissatisfaction could be wrongfully attributed to Plaintiff.  *See* Livingston Aff., ¶ 24.  This is especially true since Plaintiff is a full-service hospital and Defendant only an emergency care facility.   A patient mistakenly taken to the emergency care facility would not have access to the full array of services they hoped to receive at Plaintiff's facility and, if the confusion is not dispelled, Plaintiff's reputation could be at stake.  *Id.*, ¶ 25.  This scenario presents a situation where Plaintiff would lose the ability to control its reputation and goodwill.  This type of loss cannot possibly be remedied or quantified through monetary damages.  *See King Ranch, Inc. v. King Ranch Contractors, LLC*, 2013 WL 2371245 at ** 12-13 (M.D. Fla. May 30, 2013) (finding a likelihood of irreparable harm based on damage to the plaintiff's reputation and goodwill if Defendant continued to use plaintiff's valuable mark).

## III.  THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR

The third factor courts must consider when granting injunctive relief is whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party.  *See Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).  Issuing a preliminary injunction against a trademark infringer would result in no legitimate harm since "the preliminary injunction would only prevent them from using marks which they are not entitled to use." *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988).  "Any hardship caused by the preliminary

injunction may justly fall on the parties which consciously decided to dress their goods for the market in a manner 'so near to [a] successful rival that the public may fail to distinguish between them.'" *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1431-32 (D. Minn. 1989). Issuance of an injunction here would not prevent Defendant from operating its business, but would simply force Defendant to use a non-infringing name. Accordingly, the balance of equities tips in favor of Plaintiff.

## IV.   THE PUBLIC INTEREST WILL BE ADVANCED BY A PRELIMINARY INJUNCTION PREVENTING CONFUSION

The Eleventh Circuit has recognized that "the public interest in preventing confusion around the marketplace is *paramount* to any inequity caused the [defendant]." *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (emphasis added). Indeed, one of the primary purposes of the Lanham Act is to protect the purchasing public from being misled or confused as to the source or origin of goods or services. *Davidoff*, 263 F.3d at 1301 (finding that "[c]onsumers who purchase a particular product expect to receive the same special characteristics every time…. The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled").

The public interest compels entry of a preliminary injunction in this case because the public has great interest in not being confused when there are emergency medical occurrences and emergency care services at stake. Where public safety is at issue, the public interest is to protect the public. *See e.g., Martinez v. Sch. Bd. of Hillsborough Cty., Fla.*, 675 F. Supp. 1574, 1582 (M.D. Fla. 1987) (stating that *"[w]here, as here, there is any question as to whether the*

*public safety and welfare is threatened, the Court must rule on the side of that public interest*")
(emphasis in original).

Allowing there to be two emergency room facilities to coexist under the exact same
name OVIEDO ER (or any mark which includes or incorporates the name OVIEDO ER) could
lead to hazardous unintended consequences.  As disclosed in Plaintiff's cease and desist
communications to Defendant, emergency services, such as EMTs and fire departments, could
be confused as to which OVIEDO ER they are supposed to take patients to – which could
prejudice patient care because of the possibility of delayed treatment from the diversion of
care.  *See* White Aff., ¶¶ 21-31.  For instance, it is common in the industry to shorten facility
names so that emergency services can be effectively dispatched to and/or transport patients to
an identified facility, which Seminole County refers to the Oviedo ER facility as "Oviedo ER"
or "Oviedo".  *Id.*, ¶¶ 21-22.  If Defendant opened up its "Oviedo ER" a mile from Plaintiff's
Oviedo ER, emergency radio dispatch will need to create unique radio identifications for the
two facilities so emergency dispatchers do not confuse the two entities and dispatch emergency
care and transportation services to the wrong facility.  *Id.*, ¶ 26.

Further, there is significant possibility of confusion among individuals seeking
emergency care who are not going through emergency services.  *Id.*, ¶ 27.  As explained by
the Former Oviedo Fire Chief, Lars White, it is common for people to search for facilities by
name– and ultimately get directions to that facility.  *Id.*  Therefore, it is likely that individuals
would be confused when searching if there are two references to an "Oviedo ER" on the exact
same street and could result in an individual ending up in the wrong facility.  *Id.*  In addition
to having an impact on the medical care through a potential delay in treatment or not having

the medical provider of choice, this could cause issues insurance coverage. *Id.,* ¶¶ 28-30. Such a delay in treatment could be catastrophic, and even mean the difference between life or death. *Id.*, ¶ 30. Thus, absent injunctive relief, there is a significant risk of serious harm not only to Plaintiff, but to the community.

Allowing Defendant to also use "Oviedo ER" could result confusion among EMS/EMT, police and other first responders, and among individual consumers. *Id.*, ¶¶ 26 and 27; *see also* Livingston Aff., ¶¶ 19-23. And finally, there is great concern that family members of patients taken to a particular facility could be emotionally harmed in the event they were to show up at the wrong facility thinking their loved one was at that facility. *See* Livingston Aff., ¶ 23. The public interest would be served by prohibiting Defendant from using the OVIEDO ER mark given that it is not affiliated with, or endorsed by, Plaintiff and to prevent the significant confusion that would occur from two hospitals with the same name within a mile of each other. A preliminary injunction, if issued, would heavily protect the public interests in this case.

## V.   AN INJUNCTION BOND SHOULD BE WAIVED, OR SET AT A NOMINAL AMOUNT

Rule 65(c) provides "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although the language of Rule 65(c) appears to be mandatory, over the past twenty years, federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security." *Popular Bank v. Banco Popular*, 180 F.R.D. 461, 463 (S.D. Fla. 1998). "Whether or not to require a bond in any particular case -- and the amount of any such bond demanded -- is within

the discretion of the trial judge." *University Books & Videos, Inc. v. Metropolitan Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999).  In other words, this requirement may be waived by the Court.  *BMW of North America, Inc. v. Au-Tomotive Gold, Inc.*, 1996 WL 1609124 at * 9 (M.D. Fla. 1996).  This case involves Plaintiff's continued use of Plaintiff's mark despite notice of its infringement.  If an injunction were to issue forcing Defendant to change its infringing name, Defendant would still be able to continue operations without interruption. Accordingly, this Court should waive the bond requirement.

<u>CONCLUSION</u>

For the reasons discussed herein, Plaintiff is likely to succeed on its related claims for trademark infringement against Defendant based on Defendant's use of the OVIEDO ER mark, and will undoubtedly suffer irreparable harm if Defendant is allowed to continue using the OVIEDO ER mark.  Further, the public interest would be served by preventing confusion, and a balance of hardships weigh in favor of the issuance of an injunction.  As a result, a preliminary injunction should be issued preventing Defendant from continuing to use the OVIEDO ER mark until a trial on the merits can be completed.

Dated: September 13, 2019

Respectfully submitted,

*/s/ Martin B. Goldberg*
Martin B. Goldberg
Emily L. Pincow
LASH & GOLDBERG, LLP
Miami Tower, 100 SE 2nd Street, Suite 1200
Miami, FL  33131-2158
Phone: (305) 347-4040
mgoldberg@lashgoldberg.com
epincow@lashgoldberg.com

-and-

Dennis D. Murrell (*admitted pro hac vice*)
Elisabeth S. Gray *(admitted pro hac vice*)
Brian McGraw (*admitted pro hac vice*)
MIDDLETON REUTLINGER
401 S. Fourth Street, Suite 2600
Louisville, Kentucky 40202
Phone: (502) 584-1135
dmurrell@middletonlaw.com
egray@middletonlaw.com
bmcgraw@middletonlaw.com

***Counsel for Plaintiff Oviedo Medical
Medical Center, LLC***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on September 13, 2019, the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification to counsel of record.

*/s/Martin B. Goldberg*
Martin B. Goldberg
Emily L. Pincow