UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OVIEDO MEDICAL CENTER, LLC,

    Plaintiff,

v.

ADVENTIST HEALTH SYSTEM/SUNBELT, INC.
D/B/A ADVENTHEALTH OVIEDO ER,

    Defendant.

CASE NO. 6:19-cv-01711-WWB-EJK

**RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED
MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION (Dkt. S-53)**

Defendant Adventist Health System/Sunbelt, Inc. ("AdventHealth") respectfully requests this Honorable Court deny Plaintiff Oviedo Medical Center, LLC's ("OMC") Renewed Motion for Entry of a Preliminary Injunction (Dkt. S-53) ("Renewed Motion").

**I. SUMMARY OF ARGUMENT**

Nothing has changed warranting reconsideration of this Court's Order (Dkt. 40) denying Plaintiff's Motion for Entry of Preliminary Injunction ("First Motion") (Dkt. 23.) Plaintiff remains incapable of explaining or excusing its ten-month delay in seeking this extraordinary relief. This Court routinely denies motions for preliminary injunctions – as it did Plaintiff's First Motion – based on mere months of inexplicable delay, which negates the requisite finding of irreparable harm under Rule 65.

The Court should reject Plaintiff's attempt to distract the Court from that dispositive issue through newly claimed occasions of actual confusion. When the Court denied the First Motion it specifically assumed "confusion is likely to occur based on the similarity of the

marks used, the nearly identical services being rendered to the same customer base, and the parties' services being advertised in similar fashions." (Dkt. 40, p. 3.) That actual confusion is now purportedly occurring – according to Plaintiff's self-serving testimony untested by discovery and cross examination[1] – does not alter the analysis or the basis for this Court's denial of the First Motion. OMC already prevailed on this argument in the First Motion, and nothing in the Renewed Motion warrants reconsideration of the Court's denial based on the inexcusable delay.

Plaintiff continues to improperly rely on speculative and unproven risks of reputational damage to establish irreparable harm despite the benefit of this Court's explanation of the First Motion's deficiencies. (Dkt. 23, pp. 5-6.) Like its predecessor, the Renewed Motion lacks evidence – aside from conclusory statements and representations of counsel – that supports a likelihood of persistent and unbroken consumer confusion throughout treatment at the facilities. Moreover, the law requires more than a fleeting mix-up of names and consumer errors to sustain a preliminary injunction, and OMC failed to assert competent evidence of confusion caused by use of the OVIEDO ER Mark (the "Mark"). Instead, the purported confusion underscores the weakness of (and the difficulty of properly obtaining) geographically descriptive trademarks, which can be easily confused by consumers presenting to, for example, 'the emergency room in Oviedo' or 'the emergency room on Red Bug Lake Road.' The purported confusion cited in the Renewed Motion is indicative of community confusion and error that is not actionable and is common wherever similar healthcare facilities operate in proximity. The Renewed Motion should be denied.

---

[1] OMC has flatly refused to engage in any discovery related to its Renewed Motion despite AdventHealth's request. (*See* Correspondence, attached hereto as Composite Exhibit A.)

## II. ARGUMENT AND MEMORANDUM OF LAW[2]

A. <u>**Standard for Preliminary Injunction**</u>

To prevail on its Renewed Motion, OMC bears the heavy burden of clearly establishing: (1) a substantial likelihood of success on the merits of its underlying claims, (2) it will suffer irreparable harm without an injunction, (3) the possible harm to OMC exceeds the harm that would be caused to AdventHealth if the injunction issues, and (4) an injunction would serve the public interest. *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015). A preliminary injunction is an "extraordinary and drastic remedy" that cannot be awarded unless the movant clearly establishes each of the four prerequisites. *You Fit, Inc. v. Pleasanton Fitness, LLC*, Case No. 8:12-CV-1917, 2013 WL 521784, at *1 (M.D. Fla. Feb. 11, 2013), *quoting U.S. v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir.1983). OMC again failed to carry its heavy burden and its request for extraordinary relief should be denied.

B. <u>**Plaintiff's Unexplainable Delay Prohibits the Requested Relief**</u>

OMC is asking this Court to reconsider issues it already decided without providing any new information justifying its unreasonable delay in filing its Complaint. One reason this Court denied OMC's first request for a preliminary injunction was because OMC failed to timely file its claims for relief. (Dkt. 40.) Specifically, this Court found "Plaintiff unnecessarily delayed in seeking injunctive relief after learning of Defendant's intention to use a nearly identical name and mark for its new facility." (Dkt. 40.)

---

[2] OMC has incorporated its entire First Motion into its Renewed Motion (Dkt. S-53, p. 3, n. 2), therefore, AdventHealth respectfully requests the Court also consider its response to the First Motion and supporting exhibits previously filed (Dkt. 36).

"[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citations omitted). "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal— militates against a finding of irreparable harm." *Id.*; *see also Tiber Labs., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) ("Where the movant 'unduly delayed in bringing suit,' however, 'thereby negating the idea of irreparability,' a preliminary injunction should not issue." (quoting *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996)). "As such, it is not uncommon for courts to deny a preliminary injunction in the face of unexplained delays of more than two months." *InVue Sec. Prods. Inc. v. Vanguard Prods. Grp., Inc.*, No. 8:18-cv-2548-T-33SPF, 2019 WL 4671143, at *6 (M.D. Fla. July 1, 2019), report and recommendation adopted, 2019 WL 4673755 (M.D. Fla. Aug. 15, 2019); *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("Under these circumstances, plaintiffs' delay [of five months in filing suit], alone, precludes a finding of irreparable harm, and therefore warrants denial of the preliminary injunction motion concerning The Disney Store Tinker Bell-related products.").

"Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either a commercial or litigation advantage) than protecting a party from irreparable harm." *Pippin v. Playboy Entm't Group, Inc.*, No. 8:02CV2329T30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003). "A finding of inexcusable delay in trademark cases is most likely when the circumstances of the case permit an inference that the owner of the mark has timed the request for injunctive relief so

as to inhibit competition." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (denying a preliminary injunction where, "even granting Gidatex generous extensions, its claim of irreparable injury is clearly belied by its own dilatory behavior").

"[T]wo time periods are relevant in determining whether a plaintiff acts promptly in seeking judicial relief: (1) a plaintiff cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed." *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-Civ-TORRES, 2017 WL 4919222, at *5 (S.D. Fla. Oct. 31, 2017). "If either is unreasonably delayed, a finding of irreparable harm is significantly weakened." *Id*.

This Court found "Plaintiff's delay falls in the former category." (Dkt. 40.) It took OMC more than nine (9) months to file its complaint after discovering this alleged infringement. At the time the Court entered its Order (Dkt. 40), there was "undisputed evidence that Plaintiff first learned of Defendant's intention to use Oviedo ER in its name by at least November 1, 2018." (Dkt. 40.) This fact remains undisputed. OMC has offered no new information or argument to justify its lengthy delay in filing its Complaint.

Whether there is evidence of more confusion in the market does not cure OMC's delay. This Court already presumed the mark was causing confusion when it entered its Order. (Dkt. 40) ("Finally, confusion is likely to occur based on the similarity of the marks used, the nearly identical services being rendered to the same customer base, and the parties' services being advertised in similar fashions."). This Court must make multiple findings in OMC's favor before awarding award the extraordinary relief OMC seeks. OMC focuses on

the confusion element to distract from its failure to provide any new justification for its nine-month delay in filing suit.

The fact still remains "by at least December 6, 2018, Plaintiff knew that Defendant intended to move forward with its planned naming scheme but failed to seek relief for nearly nine months." (Dkt. 40.) AdventHealth has not expanded its use of its mark and is using its mark consistent with its prior representations. AdventHealth made it clear to OMC it did not intend to cease and desist and would continue using its mark for advertising and conducting its business activities. These facts were known to OMC by at least December 6, 2018, and this Court assumed these facts in rendering its Order. Even if OMC's allegations are true, evidence that these prior assumptions have come to fruition does not cure OMC's failure to act with expediency in filing its Complaint. Indeed, "[t]his delay in seeking relief – ranging from three to nearly nine months – weighs heavily against any finding of irreparable harm." (Dkt. 40.)

### C. <u>OMC Failed to Establish a likelihood of Irreparable Harm</u>

Ignoring ample case law cited in the Court's previous Order (Dkt. 40, FN 1), OMC again argues it is entitled to a presumption of irreparable injury. Quoting from a case pre-dating the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC Exchange, LLC*, 547 U.S. 388 (2006), OMC states a strong showing of likelihood of confusion *itself* constitutes a showing of irreparable harm. (S-53 at p. 12.) However, following *eBay*, this presumption no longer applies. *See Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016) ("[i]n light of the Supreme Court's holding in *eBay*, a presumption of irreparable harm cannot survive.") Instead, "[w]hat matters is that the court exercises its

discretion in light of the facts of the case and does not simply apply a categorical rule." *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016). Moreover, even if a presumption were to apply, this Court previously ruled "the evidence of unreasonable delay is sufficient to overcome any such presumption." (Dkt. 40, FN 1.)

OMC also argues irreparable harm exists because customer confusion is negatively impacting its "reputation and/or goodwill." (S-53 at p. 12, *citing FerrellGas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005).) Yet, as explained below, OMC presents *zero* evidence the purported confusion was caused by the trademarks at issue. *See, e.g., Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1332 (M.D. Fla. 2010) (noting that evidence of actual confusion must be evidence of confusion caused by the parties' marks). Instead, OMC's evidence demonstrates the alleged confusion is the result of factors such as the growing number of "new free standing emergency departments," their geographic proximity to each other, and simple clerical errors. (S-53 at Pgs. 2, 4.) Such confusion is totally unrelated to OMC's trademarks and thus does not negatively impact its reputation or goodwill.

**D. <u>OMC Failed to Present Evidence of Confusion Caused by the Marks and the Purported Confusion is Indicative of Common Non-Actionable Confusion</u>**

OMC failed to present evidence of actual confusion related to the Mark as opposed to the inherent confusion and error that occurs through use of geographic descriptions of proximal, similar facilities. That inherent confusion is the primary reason geographic trademarks require a heightened showing of secondary meaning to obtain and enforce. (Dkt. 36, § III.C.b.i.) Confusion caused by use of geographic terms in the public domain is not actionable. 2 J. THOMAS MCCARTHY, McCarthy on Trademarks §14:1 (2019) (collecting

cases regarding protections the law affords to users of geographic terms in the public domain – like Oviedo – to describe the origin of the marketed goods or services).

Plaintiff's leading example of confusion – the Memorandum by Medical Director Todd Husty – is the best evidence the asserted confusion is not caused by the respective marks, but by the many new free standing emergency departments operating in close proximity with other facilities. (Dkt. S-53, pp. 2-3 and Ex. 7). Dr. Husty lists examples of other instances of community confusion based on common municipalities (Sanford and Lake Mary) or addresses (Rinehart Road) and focuses on the recent development of free standing emergency rooms generally as the primary source of confusion.[3] (*Id.*). Likewise, the Confusion Log lists common clerical errors based on the carelessness of the purportedly confused individual without any link to OMC's Mark. Such confusion is not actionable, and a reasonably careful person, patient, or emergency responder can easily distinguish the Parties' facilities. (*See e.g.* Dkt. S-52, Ex. 2, Bates No. 799 ("Patient's family came in looking for patient, was told to go to Oviedo ER on Red Bug, only to choose the wrong one."); Bates No. 800 ("…told by nursing home provider to go to Oviedo ER on Red Bug Lake Road")); *see also* 2 J. THOMAS MCCARTHY, McCarthy on Trademarks §23:13 (2019) (collecting cases); *see e.g.*, *Allstate Ins. Co. v. Allstate Inv. Corp.*, 210 F. Supp. 25, 29

---

[3] Managing this sort of market confusion between healthcare facilities was historically part of the Certificate of Need ("CON") process required to open new facilities. The Florida legislature's repeal of significant portions of the CON requirements in 2019 indicates legislative disinterest and withdrawal from regulating the opening of new healthcare facilities in Florida markets. The retraction suggests legislative intent to allow market forces to drive healthcare expansion, and contravenes OMC's attempt through this lawsuit to impose court-ordered barriers to competition.

(W.D. La. 1962), aff'd, 328 F.2d 608 (5th Cir. 1964)[4] ("[W]e are sure that innumerable mistakes of a similar nature have been made as between other companies or concerns, such as those many businesses having names beginning with commonly used words like Louisiana, Shreveport, Caddo, Tri-State, Ark-La-Tex, Twin-City, National, Southern, and many others to which attention might be adverted. This does not mean that there is confusion in the public mind as to the nature of the products or services offered, but as we have said, it is due simply to carelessness. Such is not enough to justify granting the drastic relief demanded here.").

Moreover, OMC failed to present evidence demonstrating an "appreciable number of ordinarily prudent prospective purchasers are likely to be deceived." *See B. D. Communications, Inc. v. Dial Media, Inc.*, 429 F. Supp. 1011, 195 U.S.P.Q. 332 (S.D.N.Y. 1977) (isolated or de minimis number of misdirected communications are insufficient); *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 200 U.S.P.Q. 421 (3d Cir. 1978) (nineteen misdirected letters in four years during which defendant sold 50 million items held "extremely minimal evidence"); *Amica Mut. Ins. Co. v. R.H. Cosmetics Corp.*, 204 U.S.P.Q. 155, 1979 WL 24882 (T.T.A.B. 1979) (ten misdirected letters in five years due to "careless or inattentive individuals" and of "no legal consequence"). Of Plaintiff's claimed "over fifty (50) instances of actual confusion" only eleven (11) relate to patient consumers or families. The remainder of the entries on the Confusion Log describe clerical errors resulting in misdirected invoices, deliveries, phone calls, and construction materials by vendors and other

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

healthcare professionals that are not consumers of the Parties' services. (*See e.g.* Dkt. S-52, Ex. 2, Bates No. 796 (misdirected construction steel and confused Spectrum TV service installer); Bates No. 797 (misdirected mail); Bates No. 799 (misdirected bills); Bates No. 800 (misdirected Christmas card)). As argued above, none of the purported confusion is demonstrably related to AdventHealth's mark and instead results from common use of the geographic terms Oviedo and Red Bug Lake Road. However, assuming *arguendo* the confusion was caused by use of the marks, 11 instances of patient confusion out of 2,302 patients treated at AdventhHealth Oviedo ER in the three months since opening,[5] is insufficient to establish that an appreciable number of prudent consumers are likely to be deceived. *B. D. Communications*, 429 F. Supp. 1011.

Finally, OMC is complicit in creating the confusion of which it complains. Without disclosing the geographic nature of the Mark to the USPTO,[6] OMC employs the Mark differentiating (or not differentiating) its facility from competitors in the market through use of only the name of the city in which it operates and the category of medical services it provides. In doing so it assumed the risk consumers may be confused by AdventHealth's and the community's valid use of the public-domain terms Oviedo and ER[7] to describe the location and services of either facility. Moreover, unlike AdventHealth, which presents the descriptive terms linked to its national brand, OMC makes no effort to mitigate confusion in the marketplace by linking or differentiating its facility by use of its brand – HCA

---

[5] Affidavit of Nicole Crocker, attached hereto as Ex. B, at ¶ 16.
[6] File History of U.S. Trademark Application No. 88/366,385, attached hereto as Ex. C. (Section D, Infra.)
[7] OMC specifically disclaimed the term "ER" in its application. (Ex. C, p. 1.)

Healthcare.[8] Having assumed the risk of confusion related to geographic descriptions and choosing not to mitigate confusion by use of its brand name, OMC is primarily responsible – or at least complicit – in the purported confusion it seeks to redress here.

### E. OMC Cannot Establish Rights in a Geographically Descriptive Term

AdventHealth reiterates its prior evidence and argument demonstrating OVIEDO ER is a geographically descriptive term that is not enforceable as a trademark. More specifically, AdventHealth incorporates herein the following specific portions of its Response (Dkt. 36) to Plaintiff's First Motion. *See, e.g., Northland Cas. Co. v. HBE Corp.*, 145 F. Supp. 2d 1310, 1315 (M.D. Fla. 2001) (permitting parties to incorporate by reference specific portions of prior pleadings).

- OMC's ownership claim is based upon a back-dated assignment executed just weeks before the filing of the present lawsuit. (Dkt. 36 at p. 6.) This *nunc pro tunc* assignment, in turn, references a Quitclaim Deed executed on January 30, 2017. As neither document is sufficient to transfer trademark rights, OMC's claims fail.

- OMC attempts to establish five years of continuous use by tacking onto the rights of Central Florida Regional Hospital, Inc. However, in the absence of an effective trademark assignment, OMC cannot rely upon these rights and does not have five years of continuous use. (Dkt. 36 at p. 9.)

- OMC has not come forward with any consumer surveys or other evidence suggesting that the OVIEDO ER mark has come to uniquely identify its emergency room services. (Dkt. 36 at p. 10.)

- Neither OMC's Facebook page nor the signage leading into its facility contains any reference to the OVIEDO ER mark. (Dkt. 36 at p. 12.)

- As recently as August of 2017, and perhaps even later, OMC's website did not feature the OVIEDO ER trademark. (Dkt. 36 at p. 12.)

- OMC presented no evidence demonstrating how much money it spends promoting the OVIEDO ER mark. (Dkt. 36 at p. 14.)

---

[8] This is true also for the hospital, Oviedo Medical Center, within which the Oviedo ER exists.

OMC's reliance on its federal trademark registrations is unavailing. The prosecution history of these marks demonstrates the Trademark Examining Attorney at the USPTO was completely unaware of the geographic significance of "Oviedo." In particular, for the "owner address" OMC listed Nashville, Tennessee and otherwise gave no indication to the Examining Attorney that Oviedo was a city in Florida. *See* Ex. C at p. 2 (U.S. Trademark App. Ser. No. 88/366,385). The Examining Attorney also included two Notes to the File indicating the "Geographic significance" of the mark was not considered. *See* Ex. C at pp. 18-19 (Geographic significance was not checked).[9] Notably, OMC never bothered to correct the Examining Attorney's misunderstanding or otherwise inform the USPTO its emergency room was, in fact, located in Oviedo. AdventHealth plans to seek cancellation of these marks based upon this, at-best, misrepresentation to the USPTO.

**F. A Sizable Bond and Evidentiary Hearing are Required if an Injunction Issues**

The purpose of the required bond is to compensate AdventHealth if a wrongful injunction issues. Merely stating Defendant will not prevail and will not be otherwise damaged is wholly insufficient to avoid the bond requirement, which likely provides the only remedy for an injunction issued in error. AdventHealth will incur significant costs and lost revenue if the injunction issues and respectfully requests the Court set an evidentiary hearing to determine the sufficiency of the required bond in that event.

---

[9] The prosecution history of OMC's other mark (U.S. Trademark App. Ser. No. 88/370,236) contains similar notes to the file.

## III. CONCLUSION

OMC failed to explain the ten-month delay justifying the Court's denial of its First Motion. Nothing has changed regarding the Parties' marks, AdventHealth's alleged infringement, or the alleged damages resulting from that use since the Court denied the First Motion other than the purported actual confusion. This Court assumed such confusion would occur when it denied OMC's first motion, and OMC presents no authority or other justification for the Court's reconsideration of that Order here. The purported confusion is also not related to the Mark; rather, the cited incidents are indicative of community confusion wherever similar healthcare facilities operate in close proximity – especially where, as here, the facilities are on the same road and have the city name in their brands.

WHEREFORE, AdventHealth requests this Court enter an order denying OMC's Renewed Motion for Preliminary Injunction. Further, AdventHeath, pursuant to Fed. R. Civ. P. 65 and Local Rule 4.06, respectfully requests a hearing on this motion.

Respectfully submitted this 17th day of January, 2020,

/s/ *Mayanne Downs*
Mayanne Downs
Florida Bar No. 754900
Primary: mayanne.downs@gray-robinson.com
Secondary: kathy.savage@gray-robinson.com
Michael J. Colitz, III
Florida Bar No. 164348
Primary: michael.colitz@gray-robinson.com
Secondary: jessica.gonzalez@gray-robinson.com
Jason Zimmerman
Florida Bar No. 104392
Primary: jason.zimmerman@gray-robinson.com
Secondary: cindi.garner@gray-robinson.com
**GrayRobinson, P.A.**
301 E. Pine Street, Suite 1400 (32801)
P.O. Box 3068

Orlando, Florida 32802
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

*Attorneys for Defendant,*
ADVENTIST HEALTH SYSTEM/SUNBELT, INC.
D/B/A ADVENTHEALTH OVIEDO ER

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2020, a true and correct copy of the foregoing was filed through the CM/ECF system which will serve an electronic copy on

*Counsel for Plaintiff, Oviedo Medical Center LLC*:

| | |
|---|---|
| Martin B. Goldberg, Esq. | Dennis D. Murrell |
| Emily L. Pincow, Esq. | Elisabeth S. Gray |
| Lash & Goldberg, LLP | Brian McGraw |
| Miami Tower | Middleton Reutlinger |
| 100 SE 2nd Street, Suite 1200 | 401 S. Fourth Street, Suite 2600 |
| Miami, Florida 33131-2158 | Louisville, Kentucky 40202 |
| mgoldberg@lashgoldberg.com | dmurrell@middletonlaw.com |
| epincow@lashgoldberg.com | egray@middletonlaw.com |
| | bmcgraw@middletonlaw.com |

/s/ *Mayanne Downs*
Mayanne Downs
Florida Bar No. 754900

# INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Composite Exhibit of Correspondence between the parties regarding discovery |
| B | Affidavit of Nicole Crocker |
| C | File History of U.S. Trademark Application No. 88/366,385 |